In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-03-00018-CV


______________________________




ALEX MELVIN WADE, JR., Appellant



V.



FOX TELEVISION STATIONS, INCORPORATED, ET AL., Appellees




 


On Appeal from the 152nd Judicial District Court


Harris County, Texas


Trial Court No. 2002-28403




 




Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 Alex Melvin Wade, Jr., has filed an appeal from a summary judgment which his notice of
appeal states was granted on November 14, 2002. Our records do not indicate that any post-trial
motions were filed; thus, the record was due before January 13, 2003. Our records reflect that no
reporter's record was made and that the district clerk has declined to begin preparation of a clerk's
record because Wade, who is not indigent, has not paid, or made arrangements to pay, for its
preparation. See Tex. R. App. P. 35.3(a)(2), 37.3(b).

 On January 29, 2002, we wrote to Wade, warning him that, if he did not provide this Court
with an adequate explanation for the delay and show he was making a positive effort to pursue his
appeal, it would be dismissed. Wade responded, informing us he had mailed a draft for $1,200.00
to the district clerk's office in Harris County to pay for the preparation of the record. Our clerk's
office contacted the district clerk, who informed us they have received no money from Wade. We
again wrote to Wade, warning him that, if he did not, before March 3, 2003, provide this Court 
appropriate documentation that he was making a reasonable effort to obtain the record, his appeal
would be subject to dismissal for want of prosecution. 

 In response, Wade again contacted this Court, asking us to use the appendices attached to his
brief as the record for the appeal and stating that the United States Postal Service has not responded
to his efforts to obtain information about the final disposition of his money draft (which he states he
sent by certified mail). 

 We cannot use appendices in place of a clerk's record. In the absence of a record, this Court
has nothing to review. Therefore, we cannot consider such a case on its merits. Another ten days
have now elapsed since the final due date set by this Court in our last letter. No clerk's record has
been filed, and the information provided to this Court does not show that Wade has either paid, nor
made arrangements to pay, the clerk's fee for preparing the record. See Tex. R. App. P. 37.3(b).

 We dismiss the appeal for want of prosecution.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: March 21, 2003

Date Decided: March 24, 2003



sdiction because MidTexas failed to comply with the jurisdictional prerequisites for
filing a condemnation action. Specifically, Dernehl alleged MidTexas did not negotiate in good faith
because its offer required him to grant MidTexas rights it could not obtain through condemnation. 
Dernehl also filed a plea to the jurisdiction that mirrored his arguments in his Motion for Partial
Summary Judgment. 

 MidTexas filed a Motion for Partial Summary Judgment, in which it contended it met all the
jurisdictional prerequisites to filing its condemnation action. With respect to Dernehl's allegation
that it failed to negotiate in good faith, MidTexas contended it satisfied the good faith requirement
when it made a bona fide offer it believed was the amount of compensation owed. The trial court
granted MidTexas's Motion for Partial Summary Judgment and denied Dernehl's motion.

 Later, Dernehl reurged his plea to the jurisdiction, requesting the trial court to dismiss the
suit. The trial court granted Dernehl's plea to the jurisdiction, dismissing MidTexas's condemnation
action. The trial court then severed Dernehl's counterclaim, making its dismissal order a final,
appealable order. 

 "The Texas land condemnation scheme is a two-part procedure involving first, an
administrative proceeding, and then if necessary, a judicial proceeding." Amason v. Natural Gas
Pipeline Co., 682 S.W.2d 240, 241 (Tex. 1984). When a governmental entity, or an entity with
eminent domain authority, seeks to acquire real property for public use, but is unable to agree with
the owner on the amount of damages, the entity may begin a condemnation proceeding by filing a
petition in the proper court. Tex. Prop. Code Ann. § 21.012(a); Amason, 682 S.W.2d at 241. Such
a petition must (1) describe the property to be condemned, (2) state the purpose for which the entity
intends to use the property, (3) state the name of the owner, if known, and (4) state that the entity and
the landowner are unable to agree on damages. Tex. Prop. Code Ann. § 21.012(b).

 When a party files such a petition, the trial court must appoint three special commissioners
who assess the damages and file an award reflecting their opinions of the land's value. Tex. Prop.
Code Ann. § 21.014(a); Amason, 682 S.W.2d at 241-42. If the condemnee is unsatisfied with the
award, he or she may file an objection in the trial court. Tex. Prop. Code Ann. § 21.018(a);
Amason, 682 S.W.2d at 242. The filing of an objection vacates the commissioners' award and,
coupled with service of citation on the condemnor, forecloses reinstatement of the commissioners'
award. Amason, 682 S.W.2d at 242. What had been an administrative proceeding converts into a
cause of action with the condemnor as plaintiff and the condemnee as defendant. Id.

 Dernehl filed, and the trial court granted, a plea to the jurisdiction alleging MidTexas failed
to meet the unable-to-agree requirement of Section 21.012(b). The attempt to agree is a
jurisdictional prerequisite to the statutory proceedings. State v. Schmidt, 894 S.W.2d 543, 545 n.1
(Tex. App.-Austin 1995, no writ) (citing Brinton v. Houston Lighting & Power Co., 175 S.W.2d
707, 709-10 (Tex. Civ. App.-Galveston 1943, writ ref'd)). The condemnor has the burden of proof
on the unable-to-agree issue. Id. at 544.

 The absence of subject matter jurisdiction may be raised by a plea to the jurisdiction, as well
as by other procedural vehicles, such as a motion for summary judgment. Bland Indep. Sch. Dist.
v. Blue, 34 S.W.3d 547, 554 (Tex. 2000). A plea to the jurisdiction is a dilatory plea, the purpose
of which is to defeat a cause of action without regard to whether the claims asserted have merit. Id. 
A dilatory plea is not intended to force the plaintiff to preview its case on the merits, but to establish
a reason why the merits of the plaintiff's claims should never be reached. Id. A court deciding a plea
to the jurisdiction is not required to look solely to the pleadings, but may consider evidence and must
do so when necessary to resolve the jurisdictional issues raised. Id.

 This standard is followed in condemnation cases. In State v. Hipp & Dowd, 832 S.W.2d 71,
75-76 (Tex. App.-Austin 1992), writ denied as to Hipp & rev'd on other grounds as to Dowd, State
v. Dowd, 867 S.W.2d 781, 783 (Tex. 1993) (per curiam), the court of appeals held the trial court
must determine as a threshold matter whether the condemnor has satisfied the unable-to-agree
requirement. The court likened the determination of subject matter jurisdiction in this context with
the determination of personal jurisdiction, which often requires the trial court to resolve factual
issues in the course of determining whether it can exercise personal jurisdiction over the defendant. 
Id.; see also E.L.M. Leblanc v. Kyle, 28 S.W.3d 99, 101 (Tex. App.-Texarkana 2000, pet. denied)
(holding issue of personal jurisdiction is a question of law, but resolution of underlying factual
questions are subject to review for sufficiency of evidence).

 MidTexas contends it met the unable-to-agree requirement as a matter of law. In Hipp &
Dowd, the court of appeals held that in order to show it has complied with the unable-to-agree
requirement, the condemnor must show (1) it made a single bona fide offer, which the condemnor
in good faith believed was the amount of compensation due, and (2) the landowner rejected the offer. 
Hipp & Dowd, 832 S.W.2d at 77-78. Prolonged negotiations or a series of offers and counteroffers
are not required. Id. A bona fide offer is not arbitrary or capricious, but is based on a reasonably
thorough investigation and honest assessment of the amount of just compensation due the landowner
as a result of the taking. Id. at 78-79. Under Texas law, a party may also show it fulfilled the
unable-to-agree requirement by showing further negotiations would have been futile. Houston N.
Shore Ry. Co. v. Tyrrell, 128 Tex. 248, 98 S.W.2d 786, 795-96 (1936); Anderson v. Clajon Gas Co.,
677 S.W.2d 702, 706 (Tex. App.-Houston [1st Dist.] 1984, no writ).

 As the court did in Hipp & Dowd, we construe MidTexas's contention as a challenge to the
legal sufficiency of the evidence on which MidTexas had the burden of proof. Hipp & Dowd, 832
S.W.2d at 76. When a party challenges the legal sufficiency of an adverse finding on an issue on
which it had the burden of proof, it must demonstrate the evidence conclusively established all vital
facts in support of the issue. Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989). In
reviewing such a legal sufficiency challenge, we must first examine the record for evidence
supporting the finding, while ignoring all evidence to the contrary. Id. If there is no evidence to
support the finding, we must then examine the entire record to determine if the contrary proposition
is established as a matter of law. Id.

 Reviewing the record in the present case, we conclude there was evidence supporting the trial
court's ruling. It is uncontroverted that MidTexas made an offer to Dernehl. In his affidavit, David
Dunwoody, who oversaw all negotiations between MidTexas and Dernehl, states MidTexas retained
a real estate appraiser, who "estimated a value of $5,883.64 to compensate [Dernehl] for the
acquisition of a 3.05 acre permanent easement and a 3.19 acre temporary easement . . . ." 
MidTexas's agent contacted Dernehl and offered him $11,333 for the easement. Dunwoody further
states Dernehl "declined this offer and demanded $120,000 for the easement rights and damages." 
MidTexas responded with a final offer of $13,331, to which Dernehl did not respond. 

 Dunwoody states that "MidTexas . . . made it clear that [it] was seeking to acquire an
easement for one natural gas pipeline," that "the terms of any proposed easement were always
negotiable," and that in fact other landowners negotiated voluntary agreements with MidTexas,
"changing certain terms from those initially offered and otherwise coming to workable
compromises." He also states it is MidTexas's policy to pay more than fair market value to avoid
litigation. 

 Dernehl contends MidTexas's offer included rights and imposed obligations it did not seek
in condemnation and could not obtain through condemnation. Dernehl directs us to the Right of
Way Agreement attached to MidTexas's final offer, which (1) grants MidTexas the right to transport
gas, oil, petroleum products, or any other liquids, gases, or substances that can be transported
through a pipeline; (2) grants MidTexas the right to assign the easement; and (3) obligates Dernehl
to warrant and defend title to the easement. In contrast, MidTexas's second amended petition states
MidTexas seeks the right to maintain the pipeline as it deems "necessary or desirable in connection
with the use and convenient operation of the pipeline for the transportation of natural gas." 
(Emphasis added.) MidTexas's petition does not explicitly mention the right to assign the easement,
does not seek the right to transport products other than natural gas through the pipeline, and does not
seek to obligate Dernehl to warrant and defend title to the easement. 

 MidTexas contends the relevant question is whether it made a bona fide offer for the
easement, irrespective of the rights it sought in the condemnation action. Dernehl contends the
relevant question is whether MidTexas made a bona fide offer for the rights it sought in
condemnation. In Hipp & Dowd, the court of appeals held the condemnor must make a bona fide
attempt to agree with the landowner on the amount of compensation due "as a result of the taking." 
Hipp & Dowd, 832 S.W.2d at 77. Yet the court did not elaborate on whether the compensation due
as a result of the taking was based on the easement sought in the negotiations or the easement sought
in the condemnation action.

 The Texas Supreme Court has held the landowner is entitled to compensation for the
difference in market value of the easement strip and the remainder before and after the taking. White
v. Natural Gas Pipeline Co. of Am., 444 S.W.2d 298, 301 (Tex. 1969). While damages are based
on the change in market value of the land, market value itself is a function of the rights obtained in
condemnation. The greater the burden on the land as a result of the easement, the greater the
diminution of market value.

 MidTexas would have us hold it made a bona fide offer merely because it made an offer that
reflected its good faith belief in the value of the easement. That contention ignores the fact that it
sought rights and obligations in its offer it did not seek in condemnation. Dernehl could not have
accepted MidTexas's offer without also agreeing to the rights and obligations MidTexas sought.

 Hubenak v. San Jacinto Gas Transmission Co., 37 S.W.3d 133, 135 (Tex. App.-Eastland
2001, pet. denied), also involved the rights and obligations that MidTexas sought to negotiate in the
present case. In the Hubenak case, however, the trial court denied the landowners' motions for
summary judgment and granted the condemnor's motion for summary judgment on the unable-to-agree issue. Id.

 In reversing, the Eastland court held there were fact issues precluding summary judgment. 
Id. at 137. Specifically, the court noted there was evidence that the condemnor's offer included the
rights and obligations the landowner found objectionable and that the condemnor insisted on the
right of assignability. Id. at 136. The court also concluded there were fact questions concerning
whether further negotiations would be futile. Id.

 In the present case, there was no evidence that MidTexas ever made an offer which
comprehended only the rights it sought in condemnation. Dunwoody's affidavit asserts MidTexas's
offer was based on the real estate appraiser's assessment of the fair market value of the land,
increased by an amount intended to induce Dernehl to forestall litigation. Yet its offer contained
additional rights and obligations it did not seek in condemnation.

 In the recent case of Cusack Ranch Corp. v. MidTexas Pipeline Co., No. 13-00-247-CV,
2001 WL 1558360 (Tex. App.-Corpus Christi Nov. 29, 2001, no pet. h.) (not yet released for
publication), the Corpus Christi Court of Appeals addressed a similar issue. That court stated that
the law requires a "bona fida attempt to agree." We agree. However, the legislative intent for such
a requirement was to avoid the necessity of litigation if the parties could reach an agreement on the
purchase price of the property to be condemned. Thus, the Legislature contemplated that the bona
fida attempt to agree would be for the purchase price of the property to be condemned. We believe
that the Legislature, by making this requirement as a prerequisite to condemnation, intended bona
fide negotiations for the property to be condemned, not a negotiation that included other properties
or rights beyond the condemnation. At no point does the evidence show in the present case that
MidTexas made an offer including only those rights that it was authorized to acquire through a
condemnation proceeding. Offers to purchase property that included the property to be condemned
but going beyond that in acquiring additional rights or properties is not enough to satisfy a good faith
negotiation.

 MidTexas contends there is no evidence supporting the inference that Dernehl would have
agreed to its offer if it did not seek the additional rights and obligations or that the additional rights
and obligations had any bearing on Dernehl's decision to refuse MidTexas's offer. However,
MidTexas had the burden to prove it met the unable-to-agree requirement. See Schmidt, 894 S.W.2d
at 543. There was legally sufficient evidence supporting the trial court's implied finding it did not.

 MidTexas contends this case is like Mercier v. MidTexas Pipeline Company, 28 S.W.3d 712
(Tex. App.-Corpus Christi 2000, pet. denied). In Mercier, the court of appeals concluded there was
evidence the condemnor offered the landowner twice what his land was worth. Id. at 720. However,
there is no indication in Mercier whether the condemnor's offer included the rights and obligations
at issue in this case.

 MidTexas also contends it met the unable-to-agree requirement because the evidence shows
further negotiations would have been futile. Dernehl contends futility of further negotiations is in
the nature of an affirmative defense that MidTexas had to plead, citing Madison Rayburn, Texas
Law of Condemnation § 45(4) (1960). There is some authority for that position. In Tyrrell, 98
S.W.2d at 795, the landowner contended the condemnor's petition was fatally defective in failing to
allege futility. The Texas Supreme Court held the allegations, though wanting in particularity and
conclusory, were sufficient against a general demurrer when aided by other allegations contained in
the petition and by facts reasonably inferred from the petition. Id.; see also Brinton, 175 S.W.2d at
709. Courts in more recent cases have not required that a party have pleaded futility in order to show
it met the unable-to-agree requirement, looking instead to whether the evidence fairly raised the
issue. Hubenak, 37 S.W.3d at 136; Anderson, 677 S.W.2d at 706; Willoughby v. Upshur Rural Elec.
Coop. Corp., 562 S.W.2d 33, 35 (Tex. Civ. App.-Tyler 1978, writ ref'd n.r.e.); Mid-America
Pipeline Co. v. Hadwiger, 471 S.W.2d 157, 159 (Tex. Civ. App.-Amarillo 1971, no writ); Aronoff
v. City of Dallas, 316 S.W.2d 302, 306 (Tex. Civ. App.-Texarkana 1958, writ ref'd n.r.e.).

 Regardless of whether MidTexas was required to plead further negotiations would be futile
in order to show it met the unable-to-agree requirement, the evidence supports the trial court's
implied finding that further negotiations would not be futile. Because there was no evidence
MidTexas ever made an offer comprehending only the rights it sought in condemnation, MidTexas
failed to show further negotiations would have been futile.

 The judgment is affirmed.



 Ben Z. Grant

 Justice





DISSENTING OPINION


 I believe the evidence shows as a matter of law that MidTexas Pipeline Company made a
bona fide effort to agree with Wilbert O. Dernehl on the amount of damages for the easement it
sought to condemn. See Cusack Ranch Corp. v. MidTexas Pipeline Co., No. 13-00-00247-CV, 2001
WL 1558360 (Tex. App.-Corpus Christi, Nov. 29, 2001, no pet. h.) (not yet released for
publication). The Cusack Ranch case is on all fours with the case here.

 The marjority opinion says that MidTexas never made Dernehl an offer for the easement it
later sought in condemnation. That statement is inaccurate. The summary judgment evidence shows
that MidTexas never sought to condemn anything but an easement for a thirty-inch pipeline to
transport natural gas. MidTexas' initial offer, dated May 19, 1995, offered Dernehl $11,333.00. In
its initial letter offers to the landowners, MidTexas stated that the easement sought to be purchased
was "a 50-foot permanent easement for one 30 inch pipeline used to transport natural gas." (1) That
is exactly what, and only what, MidTexas later sought to acquire by eminent domain. Summary
judgment evidence shows that MidTexas never sought to condemn any property or right other than
a fifty-foot easement for a thirty-inch natural gas pipeline.

 It is true that MidTexas' initial letter offer to purchase the easement had attached to it a right-of-way agreement form that contained provisions for warranty of title, a right to assign the easement,
and an authorization for MidTexas to transport other substances through the pipeline. MidTexas
made it clear, however, that the terms of the right-of-way form were negotiable. MidTexas' summary
judgment affidavits and deposition testimony also state that the terms of the right-of-way form were
always negotiable, (2) and the letter offer makes the form of the right-of-way agreement subject to the
landowner's acceptance.

 Dernehl never objected, before condemnation proceedings were instituted, about the terms
of the right-of-way form, but only made a counter-offer to MidTexas of $120,000.00 for the
easement. MidTexas had engaged an independent real estate appraiser who appraised the value of
the easement at $5,883.64. MidTexas, however, initially offered $11,333.00, nearly twice the
appraised value. After Dernehl demanded $120,000.00, MidTexas made another offer of
$13,331.00, which was more than twice the amount awarded by the special commissioners for the
easement, which was $6,000.00.

 Even if the extra ownership incidents set out in the right-of-way form could be considered
property rights in MidTexas' offer to purchase, MidTexas' offers still included the property ultimately
condemned, i.e., the easement for a thirty-inch pipeline to transport natural gas. MidTexas offered
$13,331.00 for the natural gas pipeline easement and the incidental rights. Having offered a
reasonable sum for all of the rights, the offer necessarily included the natural gas pipeline easement,
because the greater includes the lesser. In the negotiations, Dernehl never objected to the terms of
the right-of-way agreement, and he never made a counter-offer for just the natural gas pipeline
easement without the extra incidents. Nor did he request that MidTexas make an offer for the natural
gas pipeline only. See Cusack Ranch Corp. v. MidTexas Pipeline Co., 2001 WL 1558360.

 Dernehl asserts in his brief that MidTexas threatened and intimidated him by including in its
initial offer the incidental rights set out in the right-of-way form, and by telling him that if he did not 
voluntarily sell the easement and the other incidental rights, MidTexas would take the matter to
condemnation. There is absolutely no summary judgment evidence to support any allegation of
threats or intimidation. A pipeline company has a perfect right to try to purchase an easement
granting a larger interest, and then later decide to condemn only a lesser interest. A reasonable offer
to purchase the greater estate necessarily serves as a reasonable offer for the lesser estate because the
greater includes the lesser. And the company has a perfect right to advise the landowner that if they
cannot agree on damages, it will seek to acquire the easement by eminent domain. See Marburger
v. Seminole Pipeline Co., 957 S.W.2d 82 (Tex. App.-Houston [14th Dist.] 1997, pet. denied).

 If MidTexas had sought to purchase only the natural gas pipeline and negotiated for it, and
then filed condemnation proceedings to acquire greater rights than it had tried to purchase, the
marjority opinion would be correct because the landowner would not have been offered a reasonable
price or negotiation for the property actually sought in condemnation. But that is the opposite of
what occurred here. 

 The purpose of the unable-to-agree requirement of the statute is to avoid litigation and
prevent needless appeals when the matter of price might have been settled by the parties. This
purpose should not be thwarted by a hypertechnical interpretation of the requirement. See Cusack
Ranch Corp. v. MidTexas Pipeline Co., 2001 WL 1558360. The majority in this case, by holding
that an offer for the property to be condemned, together with certain incidental rights, does not also
constitute an offer for the lesser property to be condemned, honors hypertechnicality to the ultimate. 
This is especially true where, as here, the parties' respective offers are so far apart it is obvious they
will not be able to agree. See id.

 Even if it can be considered that the offer for the easement, plus the additional ownership
incidents, did not constitute an offer for the easement actually condemned, the summary judgment
evidence shows as a matter of law that MidTexas made a bona fide attempt to agree with the
landowners under the principles announced in the Cusack case. As the court stated in the opinion
in that case, "the fact that MidTexas' final offer contained those [additional] terms is not, alone,
enough to negate the other evidence showing that MidTexas engaged in a good faith attempt to agree
with Cusack regarding the amount of damages." Id. at *3.

 If the summary judgment evidence does not establish as a matter of law that MidTexas made
a good faith attempt to agree, then it certainly raises a fact question on that issue. Consequently, at
the least, the summary judgment dismissing MidTexas' suit should be reversed and remanded for
trial, as the Eastland Court of Appeals did under almost identical circumstances in Hubenak v. San
Jacinto Gas Transmission Co., 37 S.W.3d 133 (Tex. App.-Eastland 2001, pet. denied).

 For the reasons stated, I would reverse the judgment and render judgment as prayed for by
MidTexas in its motion for partial summary judgment. In the alternative, I would remand the matter
to the trial court for a factual determination of the unable-to-agree requirement.




 William J. Cornelius

 Chief Justice


Date Submitted: August 28, 2001

Date Decided: February 26, 2002


Publish

OPINION ON REHEARING


 In response to the Motion for Rehearing, we add the following: This opinion does not say
and does not imply the condemnor cannot make offers for and purchase property and rights which
it cannot acquire by condemnation proceedings. However, such an offer should be made separate
and apart from the offer made as a prerequisite by law to condemnation. This does not mean the
property to be condemned cannot be a part of the separate offer, as long as the owner is given the
opportunity to sell at a specific price only that property subject to condemnation.

 Furthermore, a threat or pretense of condemnation made by the condemnor on land or for
rights not subject to condemnation and made in order to obtain additional property or rights
constitutes a wrongful act and an abuse of the right of eminent domain. 

 It is the duty of the condemnor to make such an offer, and there is no requirement that the
landowner make any type of counteroffer. The landowner is not compelled to negotiate or consider
an offer on land or rights not subject to condemnation. 

 As to the so-called greater-includes-the-lesser theory, if this were the law, it would allow the
condemnor to make an offer on a 500-acre tract of land that had been in the landowner's family for
five generations, that contained the home of the landowner, numerous improvements made by the
landowner, and other properties unconnected with the condemnation when the area sought to be
condemned involved only a small strip in the corner of the property. The condemnor could then,
under that theory, say that the negotiated offer required under the statute had been made. Such an
offer would in no way have any connection with the property to be condemned, and certainly the
Legislature could not have intended for such an offer, even though the greater included the lesser,
to be considered a good-faith negotiation in an attempt to purchase the property to be condemned.

 Eminent domain proceeding can be simplified by simply following the statute and the
legislative intent by making an offer only for the property to be condemned.




 Ben Z. Grant

 Justice




DISSENTING OPINION ON REHEARING


 For the reasons stated fully in my dissenting opinion on original submission, and for the
additional reasons expressed here, I would grant MidTexas' Motion for Rehearing.

 The conclusions reached by the majority in this case are directly contrary to the conclusions
reached in three cases decided recently in Texas. These cases are Hubenak v. San Jacinto Gas
Transmission Co., 2001 WL 1587822 (Tex. App.-Houston [1st Dist.] Dec.13, 2001, no pet. h.);
Cusack Ranch Corp. v. MidTexas Pipeline Co., 2001 WL 15538360 (Tex. App.-Corpus Christi,
Nov. 29, 2001, no pet. h.); and Hubenak v. San Jacinto Gas Transmission Co., 37 S.W.3d 133 (Tex.
App.-Eastland 2001, pet. denied). (3) Indeed, on the essential issue-whether the inclusion of property
rights in addition to the property to be condemned in the condemnor's offer renders that offer
ineffectual or not bona fide-the one case relied on by the condemnee and the majority here
(although the cite has now been removed from the majority opinion) has now been overruled on
rehearing with the opposite result prevailing. See Hubenak v. San Jacinto Gas Transmission Co.,
2001 WL 1587822.

 There is not one case that now supports the view taken by the majority in this case. If the
majority view prevails here it will add confusion to the law of eminent domain and if followed
generally, will thwart the legislative purposes to simplify eminent domain proceedings and to lessen
the likelihood of unnecessary litigation and appeals.

 I urge the majority not to contribute to the conflicts and to the hypertechnicality in the law
of eminent domain by ruling contrary to the settled law set out in the well reasoned opinions in the
cases cited here.





 I respectfully dissent to the overruling of the motion for rehearing.



 William J. Cornelius

 Chief Justice


Date Decided: February 26, 2002


Publish

1. MidTexas' final offer to Dernehl is in the record, but its initial offer of May 19, 1995 is not
in the record. The final offer, however, refers to the initial offer, and I assume that the initial letter
offer contains the same statement as the initial letter offer to the other landowners in the companion
cases that concern the same pipeline. For example, the letter to Roy Wright, one of the landowners,
is in the record in a companion case. It contains the statement about MidTexas seeking to purchase
a pipeline for natural gas and it appears that MidTexas used the same form of initial offer and final
offer for all landowners involved in this taking because the final offers all use the same language,
and are identical except for the amounts of money offered. 
2. Dernehl's summary judgment supporting affidavit posits that some of the right-of-way form
terms were actually not negotiable, but at best this would raise a fact issue.
3. The court in this case held that the fact that the condemnor's offer included rights in addition
to those it later sought to condemn did not render the offer invalid as a matter of law, but there was
a fact question whether the condemnor negotiated in good faith.