Hollis D. PITTS and Sandra
Pitts, Appellants,

v.

SABINE RIVER AUTHORITY
OF TEXAS, Appellee.

No. 06–02–00128–CV.

Court of Appeals of Texas,
Texarkana.

Submitted May 14, 2003.

Decided May 29, 2003.

Rehearing Overruled June 24, 2003.

Karl C. Hoppess, Karl C. Hoppess & Associates, PC, William D. Noel, Law Office of William D. Noel, Houston, and G. Dean Soape, Soape & Associates, Carthage, for appellant.

Mike Parker, Law Offices of Mike Parker, PC, Carthage, Earl Roberts Jr., Attorney At Law, Longview, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

JACK CARTER, Justice.

After a jury trial, the trial court held that Sabine River Authority (Sabine) met the jurisdictional prerequisites necessary for bringing a condemnation proceeding. On appeal, the landowners, Hollis and Sandra Pitts, bring the following points of error: (1) the evidence was legally and factually insufficient to support the trial court's finding that Sabine made a bona fide offer to purchase the same easement it sought to condemn; (2) the evidence was legally and factually insufficient to support the trial court's finding that Sabine complied with TEX. PROP.CODE ANN. § 21.0111 (Vernon Supp.2003); and (3) the trial court committed reversible error by overruling the Pittses' objections to the jury charge.

Under Section 49.222 of the Texas Water Code, a district or water supply corporation may acquire by condemnation any land or easement for any of its projects or purposes, and the right of eminent domain must be exercised in accordance with Chapter 21 of the Texas Property Code. TEX. WATER CODE ANN. § 49.222 (Vernon 2000). It is undisputed that Sabine qualifies as a district with the authority to condemn certain property for any of its projects or purposes. *See* TEX. CONST. art. XVI, § 59(b). Pursuant to that authority, Sabine entered into a water supply agreement with Tenaska Gateway Partners (Tenaska), in which Sabine would supply water to Tenaska's electrical power generating plant located in Rusk County. In order to fulfill its obligations under the agreement, Sabine was charged with constructing and laying a pipeline from the Toledo Basin Reservoir to Tenaska's plant. Additionally, Sabine was responsible for securing the easements necessary for laying the pipeline.

In an attempt to secure the necessary easements, Sabine made an initial offer to purchase an easement over the Pittses' 162 acres located in Panola County. In its initial offer, Sabine offered the Pittses $9,964.50 for the following:

(i) the right, privilege and easement to construct, operate, maintain, protect, repair, test, alter, replace, move, abandon in place, access, inspect, or remove three pipelines and all appurtenances necessary thereto ... for the transportation of water on, over, under, across and through that tract of land (the "Easement Area") described on the attached Exhibit "A" and depicted on the attached Exhibit "B"; and (ii) unobstructed ingress and egress from the nearest public road to the Easement Area across the lands adjacent to the Easement Area owned by the [Pittses] in order to provide [Sabine] access to the Easement Area.

....

2. During any installation of any Pipeline only, [Sabine] may utilize additional areas of land adjacent to the Easement Area for construction purposes.

The Pittses rejected that offer and made a counteroffer. In their counteroffer, the Pittses offered to sell an easement for $9,964.50 that limited ingress and egress, limited use of the rest of the tract of land during construction, and required Sabine to construct and maintain fences and gates around the easement. Sabine rejected the counteroffer. Subsequently, Sabine, by and through its attorney, tendered a letter to the Pittses dated November 1, 1999, which constituted a final offer before Sabine would initiate a condemnation proceeding. The letter provided, in pertinent part:

[Sabine] has determined to acquire an easement over and across a portion of your property for the laying, construction and maintaining a pipe lines [sic] for the transportation of water. Enclosed as exhibits "A" and "B" are the metes and bounds description and plat showing that portion of your property which [Sabine] designated for this project.

We have been authorized by [Sabine] to offer on its behalf the aggregate sum of $8,080.00 for an easement over the property described in Exhibit "A."

.... If the offer is not acceptable to you or you do not contact me before the aforementioned time, it will be necessary for [Sabine] to instigate a proceeding in eminent domain to acquire this property immediately.

The Pittses objected to the letter as not specifically addressing their concerns with regard to ingress and egress, use of the rest of their land during construction, and construction and maintenance of fences around the easement.

■ Because the parties were unable to reach an agreement on the amount of damages, Sabine initiated a condemnation proceeding. *See* TEX. PROP.CODE ANN. § 21.012 (Vernon 1984). In its original petition, Sabine provided the following description of the property to be condemned:

Condemnor has determined that there exists a necessity for, and has determined to acquire by condemnation or otherwise, an easement 75-foot wide for the purpose of laying, constructing and maintaining pipe lines for the transportation of water from the Toledo Bend Reservoir to Rusk County, Texas, the centerline of said easement being more particularly described in Exhibit "A".... [1]

1. The metes and bounds description of the easement that was attached to Sabine's sec-

Special commissioners determined that Sabine was entitled to the easement described in its petition and that the Pittses were entitled to $12,100.00 as a result of the taking. The Pittses objected to the commissioners' award, and they filed a plea to the jurisdiction and a motion to dismiss contending Sabine failed to meet the jurisdictional prerequisites needed to bring a condemnation proceeding. *See* TEX. PROP.CODE ANN. §§ 21.0111, 21.012. The proceeding was transferred to the county court at law to determine whether Sabine had complied with the applicable statutory provisions. After a jury trial, the trial court held that Sabine satisfied the statutory requirements, granted the requested easement, and awarded the Pittses $12,948.00 in damages.[2] The Pittses bring this appeal.

■ Before we reach the first point of error, a brief review of the procedural prerequisites for bringing a condemnation proceeding is necessary. "The Texas land condemnation scheme is a two-part procedure involving first, an administrative proceeding, and then if necessary, a judicial proceeding." *Amason v. Natural Gas Pipeline Co.*, 682 S.W.2d 240, 241 (Tex. 1984). When an entity with eminent domain authority seeks to acquire real property for public use, but is unable to agree with the owner on the amount of damages, the entity may begin a condemnation proceeding by filing a petition in the proper court. TEX. PROP.CODE ANN. § 21.012(a); *Amason*, 682 S.W.2d at 241. Such a petition must (1) describe the property to be

condemned; (2) state the purpose for which the entity intends to use the property; (3) state the name of the owner, if known; and (4) *state that the entity and the landowner are unable to agree on damages.* TEX. PROP.CODE ANN. § 21.012(b). After a petition is filed, the trial court must appoint three special commissioners who assess the damages and file an award reflecting their opinions of the land's value. TEX. PROP.CODE ANN. § 21.014(a) (Vernon 1984); *Amason*, 682 S.W.2d at 241–42. If the condemnee is unsatisfied with the award, he or she may file an objection in the trial court. TEX. PROP.CODE ANN. § 21.018(a) (Vernon 1984); *Amason*, 682 S.W.2d at 242. The filing of an objection vacates the commissioners' award and, coupled with service of citation on the condemnor, forecloses reinstatement of the commissioners' award. *Amason*, 682 S.W.2d at 242. The proceeding converts into a cause of action with the condemnor as plaintiff and the condemnee as defendant. *Id.*

■ In their first point of error, the Pittses contend the evidence was legally and factually insufficient to support the trial court's finding that Sabine satisfied the "unable-to-agree" requirement before bringing this condemnation proceeding. In *State v. Hipp & Dowd*, the court held that, in order to comply with the "unable-to-agree" requirement, the condemnor must show (1) it made a single bona fide offer, which the condemnor in good faith believed was the amount of compensation due, and (2) the landowner rejected the

ond amended petition was identical to the description attached to the final offer letter.

2. Whether a condemnor has met the jurisdictional prerequisites to bring a condemnation proceeding is a threshold question to be decided by the court. *Hubenak v. San Jacinto Gas Transmission Co.*, 65 S.W.3d 791, 797–98 (Tex.App.-Houston [1st Dist.] 2001, pet. granted). Accordingly, this issue should not be

submitted to the jury, and while we can consider the merits of the appeal despite this procedural mistake, the trial court should decide these questions as a matter of law. *State v. Hipp*, 832 S.W.2d 71, 75–76 (Tex.App.-Austin 1992), *writ denied as to Hipp & rev'd on other grounds as to Dowd, State v. Dowd*, 867 S.W.2d 781, 783 (Tex.1993) (per curiam).

offer. *State v. Hipp; State v. Dowd,* 832 S.W.2d 71, 75–76 (Tex.App.-Austin 1992), *writ denied as to Hipp & rev'd on other grounds as to Dowd,State v. Dowd,* 867 S.W.2d 781, 783 (Tex.1993) (per curiam). A bona fide offer is not arbitrary or capricious, but is based on a reasonably thorough investigation and honest assessment of the amount of just compensation due the landowner as a result of the taking. *Id.* at 78–79.

*Legal Sufficiency*

■■■■ In reviewing a legal sufficiency challenge, we consider only the evidence in support of the trial court's finding, disregarding all evidence and inferences to the contrary. *Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 928 (Tex.1993). If there is more than a scintilla of evidence in support of the trial court's judgment, we must affirm the judgment. *Id.*

The Pittses contend the land sought to be condemned was different from the easement Sabine sought to purchase during negotiations; therefore, Sabine could not have made a bona fide offer for the land sought to be condemned before initiating this condemnation proceeding. *See* Tex. Prop.Code Ann. § 21.012. In support of their contention, the Pittses rely on *Mid-Texas Pipeline Co. v. Dernehl,* 71 S.W.3d 852 (Tex.App.-Texarkana 2002, pet. granted). In *Dernehl,* the condemnor, MidTexas, initially offered the condemnee, Dernehl, $13,331.00 for an easement which "(1) grant[ed] MidTexas the right to transport gas, oil, petroleum products, or any other liquids, gases, or substances that can be transported through a pipeline; (2) grant[ed] MidTexas the right to assign the easement; and (3) obligate[d] Dernehl to warrant and defend title to the easement." *Id.* at 857. Dernehl refused this offer, and MidTexas instituted a condemnation proceeding. In its original petition, however,

MidTexas only sought the right to maintain the pipeline as it deemed "necessary or desirable in connection with the use and convenient operation of the pipeline for the transportation of natural gas." Dernehl contended that, in order to satisfy the "unable-to-agree" requirement, the land and property rights sought to be condemned must correspond with the offer made during negotiations. Conversely, MidTexas argued the relevant question was whether a bona fide offer was made, regardless of the rights sought in the condemnation proceeding. This Court reasoned the "unable-to-agree" requirement was enacted by the Legislature to avoid unnecessary litigation if the parties could agree on the purchase price of the property to be condemned. *Id.* at 858. Therefore, the Legislature must have intended that the bona fide attempt to agree on a purchase price would be for the land actually sought to be condemned, and offers that included other properties or rights beyond the condemnation would fail to satisfy the "unable-to-agree" requirement. *Id.*

In contrast to this Court's opinion in *Dernehl,* the Corpus Christi and Houston courts of appeals have dealt with similar issues and held that a greater offer than what was sought to be condemned would satisfy the requirements set forth in the Texas Property Code. *Cusack Ranch Corp. v. MidTexas Pipeline Co.,* 71 S.W.3d 395 (Tex.App.-Corpus Christi 2001, pet. granted); *Hubenak v. San Jacinto Gas Transmission Co.,* 65 S.W.3d 791, 800–01 (Tex. App.-Houston [1st Dist.] 2001, pet. granted). Specifically, the Houston court held that the condemnor has satisfied the jurisdictional prerequisites if it makes a single bona fide offer and the landowner rejects that offer, regardless if the property sought to be condemned does not correspond with that offer. *Hubenak,* 65 S.W.3d at 800. Further, the court held

the "unable-to-agree" requirement does not preclude the condemnor from making a combined offer for both property rights it may condemn and additional rights it desires. *Id.* at 801.

■ Despite the conflicting caselaw in this area, the present case can be distinguished from the above opinions. In those cases, the property rights contained in the offer and the property rights actually sought to be condemned were not the same. *Dernehl,* 71 S.W.3d at 858; *Hubenak,* 65 S.W.3d at 800. In the present case, however, Sabine contends its final offer, contained in the letter from its attorney dated November 1, 1999, was an offer for the same easement which it sought to condemn. The only difference between the letter offer and the rights sought during condemnation was that Sabine's second amended petition expressly called for an underground pipeline, and Sabine presented testimony that it always intended to bury the pipeline. As a result, this Court's opinion in *Dernehl* and the Houston and Corpus Christi courts' opinions are not applicable to this case, because Sabine's offer contained the same property rights as those described in its second amended petition. Accordingly, there is more than a scintilla of evidence that Sabine made a good-faith offer to purchase the same easement it sought to condemn, and the legal sufficiency challenge is overruled.

*Factual Sufficiency*

■ When considering a factual sufficiency challenge to a jury's verdict, courts of appeals must consider and weigh all of the evidence, not just that evidence which supports the verdict. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996). A court of appeals can set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. *Ortiz,* 917 S.W.2d at

772; *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). The court of appeals is not a fact-finder and may not pass on the witnesses' credibility. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 634 (Tex.1986), *rev'd on other grounds,* 22 S.W.3d 378 (Tex. 2000).

The factual sufficiency challenge is based on the same argument that Sabine offered to purchase an easement that was different from the easement it sought to condemn and, therefore, Sabine failed to meet the "unable-to-agree" requirement. Sabine's attorney, Earl Roberts, was responsible for drafting and mailing the final offer letter. With respect to that letter, the following testimony was elicited from Roberts:

Q. [Counsel] All right. You wrote a letter on November the 1st stating that you are demanding for the Sabine River Authority that the Pitts[es], Mr. Pitts, and I presume you intended Mrs. Pitts, would enter into an easement agreement or the suit for condemnation would be filed.

Were you referring to the easement agreement that is Defendant's Exhibit 2 [the original offer containing the additional property rights]?

A. [Roberts] No.

Q. What easement agreement were you referring to?

A. I wasn't referring to an easement. I said they've determined to acquire an easement.

Q. All right. And the point is, is what easement were you referring to?

A. Well, the easement that was going to be acquired through … this lawsuit.

. . . .

Q. I thought … you had just testified that Mr. Pitts and you discussed the easement and went over the terms of

the easement that's set forth in Defendant's Exhibit 2?

A. Okay. Let—let's make a distinction here. We discussed the easement agreement. But the easement agreement is different than the easement I was referring to in this letter.

While the Pittses attempted to elicit testimony that the letter did not constitute a different offer, Roberts' testimony is clear that the letter intended something different than Sabine's initial offer to purchase an easement. The Pittses have failed to show the trial court's judgment was against the great weight and preponderance of the evidence, and their factual sufficiency challenge is overruled.

*Disclosure of Market Study*

 In their next point of error, it is contended that Sabine failed to comply with Section 21.0111 of the Texas Property Code. Section 21.0111 provides in pertinent part:

(a) A governmental entity with eminent domain authority that wants to acquire real property for a public use shall disclose to the property owner at the time an offer to purchase is made any and all existing appraisal reports produced or acquired by the governmental entity relating specifically to the owner's property and used in determining the final valuation offer.

TEX. PROP.CODE ANN. § 21.0111. Before initiating the condemnation proceeding, Sabine contracted with Allen, Wiliford & Seale to perform a market study of the area. A market study is different from an appraisal. The market study conducted in the present case was a broad analysis of the land values within Rusk, Panola, and Shelby Counties.[3] This study was intend-ed to give a rough approximation of land values broken down into the following size categories: (1) less than five acres; (2) five to ten acres; (3) ten to twenty-five acres; (4) twenty-five to forty-five acres; (5) forty-five to one hundred and fifty acres; and (6) over one hundred and fifty acres. Further, the study provided that Sabine could expect to pay more or less for an easement depending on whether the land was used for agricultural purposes; whether it had timber; or whether it fronted a major roadway. Sabine admits it used a market study to determine what would constitute a fair and reasonable offer for the type of easement required on the Pittses' property. However, the only appraisal that dealt specifically with the Pittses' property was not conducted until December 14, 1999, and Sabine initiated this condemnation proceeding on November 19, 1999. Because Section 21.0111 only requires the disclosure of *appraisals relating specifically to the owner's property* before the beginning of a condemnation hearing, the Pittses have failed to show that Sabine was in violation of this statutory requirement, and their point of error is overruled. *See Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex.2002) (when construing a statute, we ascertain Legislature's intent from plain meaning of actual language used).

*Jury Charge*

In their next point of error, the Pittses contend the trial court committed reversible error by overruling their objections to the jury charge. Specifically, the Pittses complain of the following instruction and question, respectively:

With regard to the "NEGOTIATE–IN–GOOD–FAITH–REQUIREMENT," a single offer by a Condemnor will satis-

---

3. The proposed route of the pipeline would only require Sabine to secure easements in Rusk, Panola, and Shelby Counties.

fy the unable-to-agree requirement *if it is a bonafide offer.* In order to be bonafide, the offer must be made in or with good faith; honestly, openly and sincerely; without deceit or fraud. The offer must not be arbitrary and capricious; rather it must be based on a reasonably thorough investigation and honest assessment of the amount of just compensation due the landowner *as a result of the taking.*

. . . .

Do you find from a preponderance of the evidence that before this suit was filed, Sabine River Authority, acting through its agents and representatives, made a good faith and bonafide attempt to reach agreement with Hollis and Sandra Pitts by making a good faith offer and bonafide offer to pay to them the estimated true market value of *the easement being sought?*

(Emphasis added.)

■■■■ It is contended the instruction is erroneous because the court used the phrase "a single offer by a Condemnor will satisfy the unable-to-agree requirement if it is a bonafide offer," instead of "while a single offer by a Condemnor will satisfy the unable-to-agree requirement, it *must* be a bonafide offer." (Emphasis added.) Explanatory instructions should be submitted when, in the sole discretion of the trial court, they will help the jurors understand the meaning and effect of the law and the presumptions the law creates. *Ishin Speed Sport, Inc. v. Rutherford,* 933 S.W.2d 343, 349 (Tex.App.-Fort Worth 1996, no writ); *Hamblet v. Coveney,* 714 S.W.2d 126, 129 (Tex.App.-Houston [1st Dist.] 1986, writ ref'd n.r.e.). A trial court's refusal will not be overturned on appeal unless the court abused its discre-

tion. *Magro v. Ragsdale Bros., Inc.,* 721 S.W.2d 832, 836 (Tex.1986). No abuse of discretion is shown unless the requested instructions were so necessary to enable the jury to render a proper verdict that the court's refusal probably did cause the rendition of an improper verdict. *Harris County v. Bruyneel,* 787 S.W.2d 92, 94 (Tex.App.-Houston [14th Dist.] 1990, no writ); *Steinberger v. Archer County,* 621 S.W.2d 838, 841 (Tex.App.-Fort Worth 1981, no writ).

■■■ Section 21.012 of the Texas Property Code requires the condemnor to show it was unable to agree with the landowner on the amount of damages before initiating a condemnation proceeding. TEX. PROP.CODE ANN. § 21.012. While the statute does not expressly mention the term bona fide offer, Texas courts have consistently held that, in order to meet the "unable-to-agree" requirement, the condemnor *must* make a bona fide offer to the landowner.[4] *Hipp & Dowd,* 832 S.W.2d at 75–76; *Brinton v. Houston Lighting & Power Co.,* 175 S.W.2d 707, 710 (Tex.Civ. App.-Galveston 1943, writ ref'd w.o.m.). After reviewing the complained-of instruction, the trial court sufficiently informed the jury that, in order to satisfy the "unable-to-agree" requirement, the offer must be bona fide. *See* TEX.R. CIV. P. 278. As a result, the Pittses have failed to show how the trial court's phraseology caused the rendition of an improper verdict.

■■■■ Second, the Pittses contend the instruction and the question caused confusion among the jurors because the instruction refers to a bona fide offer to pay compensation as a result of the *taking,* and the question refers to an offer to pay compensation for the easement being *sought.* This argument is without merit.

---

4. A condemnor may also meet the "unable-to-agree" requirement by showing that further negotiations would have been futile, but such an argument is inapplicable to this case.

The trial court has broad discretion in submitting questions to the jury, which is subject only to the requirement that the questions submitted must: (1) control the disposition of the case; (2) be raised by the pleadings and the evidence; and (3) properly submit the disputed issues for the jury's determination. TEX.R. CIV. P. 277, 278; *Lee–Wright, Inc. v. Hall,* 840 S.W.2d 572, 577–78 (Tex.App.-Houston [1st Dist.] 1992, no writ). The Pittses do not cite to any authority, nor did we find any, that requires the trial court to use the exact same language in the jury question as it used in the instruction pertaining to that question. *See* TEX.R. CIV. P. 278 (a judgment shall not be reversed because of failure to submit other and various phrases or different shades of same question). The trial court properly exercised its discretion in submitting the controlling jury instruction and question. The Pittses' point of error is overruled.

For the reasons stated, we affirm the trial court's judgment.

ROSS, J., concurs.

DONALD R. ROSS, Justice, concurring.

I agree, as Pittses' counsel did at oral argument, the market study in this case did not technically qualify as an "appraisal report" as contemplated by TEX. PROP.CODE ANN. § 21.0111 (Vernon Supp.2003). However, I think such documents should be carefully scrutinized—as this one was—to assure they are not "appraisal reports" called by a different name just to avoid the disclosure requirement of the statute.