# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00707-CV

**Travis Central Appraisal District and Travis Central Review Board, Appellants**

**v.**

**Signature Flight Support Corporation, Triple S Petroleum, Austin Aero,
and R & J Aviation, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
NO. GN200335, HONORABLE PATRICK O. KEEL, JUDGE PRESIDING**

## O P I N I O N

The dispute in this case centers upon the legal question of who is the owner of improvements on land owned by the City of Austin. Appellees—Signature Flight Support Corporation (Signature), Triple S Petroleum (Triple S), Austin Aero, and R & J Aviation (R & J)[1]—claim that the City owns the improvements they constructed at Austin-Bergstrom International Airport and that appellees merely lease or sublease them. If so, the improvements are exempt from property taxes. The appellants, Travis Central Appraisal District and Travis Central Review Board (collectively, TCAD), assert that appellees own the improvements and are liable for the property

---

[1] Appellees will be referred to collectively except when their interests diverge.

taxes assessed. For the reasons that follow, we hold that the City owns the improvements and affirm the trial court's summary judgment in favor of appellees.

**BACKGROUND**

In 1998, the City, as owner and operator of the Austin-Bergstrom International Airport, entered into fixed-based operator leases with Signature and Austin Aero for a term of forty years. The leases granted Signature and Austin Aero particular acres of unimproved land at the airport to construct facilities for a full service fixed-based operation for general aviation.

In 1999, Signature subleased a portion of the leased premises to Triple S for the purpose of building a storage and maintenance hangar facility. Austin Aero similarly subleased a portion of its leased premises to R & J for the purpose of constructing an airplane hangar, offices, and related facilities.

In 2001, TCAD assessed property taxes against each appellee, asserting that each owned or had a taxable ownership estate or interest in the improvements that had been constructed under the leases and subleases. After unsuccessfully challenging the assessments through TCAD's protest procedures, each appellee filed suit, seeking a declaratory judgment that the property taxes assessed against them were invalid. Appellees each filed motions for summary judgment, attaching the lease and sublease agreements and arguing that the City was the owner of the improvements pursuant to the language in the leases and that the improvements were therefore exempt from property taxes. TCAD filed a cross motion for partial summary judgment, asserting that appellees were liable for the taxes as owners. After consolidating the four pending causes, the district court

2

granted appellees' motions, declaring the property tax exempt. The judgment ordered TCAD to remove the improvements and each appellee from the appraisal rolls for tax years 2001, 2002, and 2003. TCAD brought this appeal.

## DISCUSSION

### *Standard of review*

Because the propriety of a summary judgment is a question of law, we review the trial court's decision *de novo*. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994); *Texas Dep't of Ins. v. American Home Assurance Co.*, 998 S.W.2d 344, 347 (Tex. App.—Austin 1999, no pet.). The standards for reviewing a summary judgment are well established: (1) the movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

When both parties file motions for summary judgment and the court denies one and grants the other, we must review the summary-judgment evidence presented by both sides and decide all questions presented and render the judgment that the trial court should have rendered. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000).

### *Ownership of the improvements*

Improvements and land are separate estates or interests under Texas property law, *see* Tex. Tax Code Ann. § 25.04 (West 2001), and Texas recognizes the separate ownership of the

3

improvements located on leased land, *Wright v. Macdonnell*, 30 S.W. 907, 909 (Tex. 1895); *Holly v. Craig*, 334 S.W.2d 586, 587 (Tex. Civ. App.—Fort Worth 1960, no writ). If owned by different persons, improvements and land are to be listed separately on a taxing authority's tax rolls, in the names of the respective owners, except when otherwise provided by the property tax code. *See* Tex. Tax Code Ann. § 25.04; *Harris County Appraisal Dist. v. Reynolds/Texas, J.V.*, 884 S.W.2d 526, 528 (Tex. App.—El Paso 1994, no writ).

Both TCAD and appellees agree that the dispositive issue is who owns the improvements—the City or appellees? If the City owns them, they are exempt from property taxation. *See* Tex. Tax Code Ann. § 11.11 (West Supp. 2004) ("[P]roperty owned by this state or a political subdivision of this state is exempt from taxation if the property is used for public purposes.").[2] However, if appellees own the facilities, they are subject to taxation, and TCAD properly listed the improvements on the tax rolls in appellees' names. *See id.* § 25.08(b) (West Supp. 2004) ("If a person who is not entitled to exemption owns an improvement on exempt land, the improvement shall be listed in the name of the owner of the improvement."). We thus consider the summary-judgment evidence to determine whether appellees were entitled to judgment that as a matter of law they did not own the improvements.

---

[2] TCAD and appellees have stipulated that the improvements are part of a "public transportation facility owned by [the City]" under section 25.07 of the tax code and that any leasehold interest held by appellees in the improvements is, therefore, exempt from property taxation. *See* Tex. Tax Code Ann. § 25.07 (West 2001); *see also id.* § 25.06 (West 2001) ("Except as provided by Section 25.07, property encumbered by a leasehold or other possessory interest . . . shall be listed in the name of the owner of the property so encumbered."). Thus, we focus on section 25.08 of the tax code, which applies particularly to improvements. *See id.* § 25.08 (West Supp. 2004). TCAD also does not contest the "public purpose" requirement of the statute, focusing solely on the ownership question. *See id.* § 11.11 (West Supp. 2004).

The general rule is that improvements become part of the land and belong to the landowner unless there is (1) an understanding between the parties that the improvements not become permanently annexed to the land, or (2) evidence showing intent of the improver that the improvements remain personalty with the right to be removed. *See Lindsley v. Lewis*, 84 S.W.2d 994, 995-96 (Tex. 1935) (landowner's verbal agreement that brother could construct home and live on the land did not give brother any interest in improvements); *Dennis v. Dennis*, 256 S.W.2d 964, 966 (Tex. Civ. App.—Amarillo 1952, no writ) (absent agreement, son's house moved onto land owned by his mother became permanently affixed and belonged to mother); Op. Tex. Att'y Gen. No. O-4661 (1942) (structures erected by non-owners become part of realty and belong to landowner; agreement to contrary is necessary to prevent operation of this rule); *see also Armstrong v. Mission Indep. Sch. Dist.*, 195 S.W. 895, 896 (Tex. Civ. App.—San Antonio 1917), *rev'd on other grounds*, 222 S.W. 201 (Tex. Comm'n App. 1920) (improvements placed upon land by lessee with agreement that it could be removed was personal property of lessee).

A contrary intent must be clearly established:

> Houses and other improvements placed [on land] by man may or may not be a part of the realty—depending upon contracts and intentions of parties thereto. Everyone knows that in many cases that have been before the courts men erect structures and even very valuable improvements on lands of another under contracts, agreements, and evident intentions that such improvements shall never be a part of the land and never become the property of the land owner. When such conditions arise the improvements do not become real property but remain personal.

*Rogers v. Fort Worth Poultry & Egg Co.*, 185 S.W.2d 165, 167 (Tex. Civ. App.—Forth Worth 1944, no writ), *cited in Holly*, 334 S.W.2d at 587. Thus, the parties to a contract can elect to determine

5

who will be the owner of improvements located on leased real property. *See Holly*, 334 S.W.2d at 587; *Rogers*, 185 S.W.2d at 167.

If a contract is unambiguous, its terms can be interpreted as a matter of law by the court. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Where contract language is subject to two or more reasonable interpretations, it is ambiguous. *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). Whether a contract is ambiguous is a question of law for the court to decide by looking at the agreement as a whole in light of the circumstances present when the contract was entered. *Coker*, 650 S.W.2d at 394. We examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Id.* at 393. No single provision will control; rather, all provisions must be considered with reference to the whole instrument. *Id.* When an issue turns on a question of law, we do not give any particular deference to legal conclusions of the trial court and apply a *de novo* standard of review. *Trinity Indus., Inc. v. Ashland, Inc.*, 53 S.W.3d 852, 868 (Tex. App.—Austin 2001, pet. denied). We now turn to the lease contracts to determine if the City and appellees unambiguously decided who would be the owner of the improvements.

The City's leases with Signature and Austin Aero specifically provided, "Legal title to Facilities constructed by Tenant shall be held by the City after acceptance of the Facilities by the City and shall be completely vested in the City at the end of the term of this Agreement." The uncontroverted summary-judgment evidence indicates that the City accepted each of the facilities no later than 2000.[3] Thus, according to the lease, the City has held legal title to the facilities since

---

[3] TCAD contests an affidavit and its attachments submitted as summary-judgment evidence by Austin Aero and R & J as inadmissible hearsay and legal conclusion. In the affidavit, the

2000. TCAD asserts that legal title is not necessarily dispositive as to ownership, especially when another party holds an equitable ownership interest. *See Satterlee v. Gulf Coast Waste Disposal Auth.*, 576 S.W.2d 773, 777 (Tex. 1978).

TCAD points to language in the City's leases allowing the tenant to "sell the Facilities," providing that the tenant "shall have written leases with all of its tenants for *its* capital facilities" (emphasis added), and stipulating that the tenant shall pay "all federal, state and local taxes and fees . . . levied upon the Premises as a result of this Agreement or upon Tenant or upon the business conducted by Tenant on the Premises." TCAD asserts that such language, along with the provision that the City's ownership does not completely vest until the end of the lease term, confers on appellees some "beneficial" or "equitable" title that subjects them to taxation.

The tax code does not define the terms "owner," "ownership," or "own." When construing an unambiguous term in a statute, we generally interpret the statute according to its plain meaning. *State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002) (citing *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex. 1999)); *see also* Tex. Gov't Code Ann. § 312.002 (West 1998); *All Am. Life Ins. Co. v. Rylander*, 73 S.W.3d 299, 302 (Tex. App.—Austin 2001, pet. denied). The supreme court has noted that the term "owner" "has no definite legal meaning. . . . The meaning of the term *owner* is not the same under all circumstances. It is not a technical term or word at all, but one of wide application in various connections. In all instances its meaning must be ascertained from the context and subject

---

president of Austin Aero's general partner referenced and incorporated certificates of occupancy issued by the City of Austin as evidence that the City had accepted the facilities. We address the issue of this evidence's admissibility *infra*.

matter." *Realty Trust Co. v. Craddock*, 112 S.W.2d 440, 443 (Tex. 1938). The dictionary defines "owner" as "one that owns: one that has the legal or rightful title whether the possessor or not: PROPRIETOR." Webster's Third New International Dictionary 1612 (1986); *see also* Black's Law Dictionary 1130 (7th ed. 1999) ("One who has the right to possess, use, and convey something; a proprietor"). The verb "to own" means "to have or hold as property or appurtenance: have a rightful title to, whether legal or natural: POSSESS." Webster's Third New International Dictionary 1612 (1986); *see also* Black's Law Dictionary 1130 (7th ed. 1999) ("To have or possess as property; to have legal title to."). Thus, the plain meaning of "owner" contemplates someone with legal or rightful title.[4]

Texas case law has defined ownership in a similar vein. The supreme court has noted a general rule: the person who has legal title is the "owner" for taxation purposes. *See Childress County v. State*, 92 S.W.2d 1011, 1015 (Tex. 1936). If a person does not hold perfect legal title, however, that person may still be considered the taxable owner of property "[i]f he is the record owner, or is vested with the apparent legal title, or is in possession thereof, coupled with such claims and evidences of ownership as will justify the assumption that he is the owner thereof." *Id.* (purchaser of land on credit from county held to be owner for tax purposes).

Recent appellate cases suggest that a person holding "equitable title" to property may be the owner for taxation purposes; equitable title is defined as the present right to compel legal title.

---

[4] The meaning of "owner of a motor vehicle," as defined in the tax code, also evidences a concern with legal title: "a person named in the certificate of title as the owner of the vehicle." *See* Tex. Tax Code Ann. § 152.001(9)(A) (West Supp. 2004). "When the same or a similar term is used in the same connection in different statutes, the term will be given the same meaning in one as in the other, unless there is something to indicate that a different meaning was intended." *Guthery v. Taylor*, 112 S.W.3d 715, 721-22 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

8

*Comerica Acceptance Corp. v. Dallas Cent. Appraisal Dist.*, 52 S.W.3d 495, 497-98 (Tex. App.—Dallas 2001, pet. denied) (common meaning of "owner" in tax code is person or entity holding legal title or equitable right to obtain legal title to property); *Harris County Appraisal Dist. v. Southeast Tex. Housing Fin. Corp.*, 991 S.W.2d 18, 23 (Tex. App.—Amarillo 1998, no pet.) (citing *Carmichael v. Delta Drilling Co.*, 243 S.W.2d 458, 460 (Tex. Civ. App.—Texarkana 1951, writ ref'd)); *see also Sweetwater Indep. Sch. Dist. v. ReCor, Inc.*, 955 S.W.2d 703, 704 (Tex. App.—Eastland 1997, pet. denied); *Bennett-Barnes Inv. Co. v. Brown County Appraisal Dist.*, 696 S.W.2d 208, 208-09 (Tex. App.—Eastland 1985, writ ref'd n.r.e.).

In contrast, the supreme court has held that the State's contingent remainder is not enough to make the property tax exempt. *Texas Turnpike Co. v. Dallas County*, 271 S.W.2d 400, 401-02 (Tex. 1954). The *Texas Turnpike* court noted the difference between actual "equitable title"—the right of a grantee or other party to compel the conveyance of legal title by performing some condition—and a merely contingent interest in property. In the absence of a clear legal title-holder, the holder of the equitable title is considered the taxable owner, while someone with only a contingent interest is not. *See id.* Here, the City holds legal title to the facilities, and appellees have no equitable interest sufficient to compel transfer of legal title to them. They are therefore not equitable owners subject to taxation.

TCAD also relies on *Satterlee* to contend that appellees are subject to taxation due to their having a "beneficial interest" in the improvements. A beneficial interest is "profit, benefit or advantage resulting from contract or ownership of estate as distinct from legal ownership or control." *Satterlee*, 576 S.W.2d at 777 (citing *Christiansen v. Department of Soc. Sec.*, 131 P.2d 189, 191 (Wash. 1942)). In *Satterlee*, the Gulf Coast Waste Disposal Authority (the Authority)

9

sought a declaration that a disposal facility, constructed and operated for the benefit of several private industries, was exempt from property taxation. 576 S.W.2d at 774. The relevant documents provided that the Authority would hold legal title only so long as the facility was used for treatment of industrial waste and that the industries had exclusive use of the facility and significant control over its operation. The relevant statute provided: "All property, whether real or personal, *belonging exclusively* to this State, or any political subdivision thereof" shall be exempt from taxation. *Id.* at 774-75 (emphasis added in original). The court observed, "The initial problem to be solved is whether these instruments, when viewed in their entirety, vested *exclusive ownership* of the property in the Authority as required for tax exemption." *Id.* at 775 (emphasis added). The court held that because the industries had a beneficial interest in the facilities, the State did not have exclusive ownership, and hence under the governing statute the property was not tax exempt. *Id.* at 777.

The definition of "beneficial interest" in *Satterlee* does not make the airport facilities at issue here taxable. Under the tax code, appellees must be the "owner" of the facilities, as that term has been defined in Texas law. Whatever possessory interests appellees have, they do not include the right to compel legal title upon certain conditions. Thus, appellees, who do not have legal title, also do not have equitable title and are not the owners of the facilities. Furthermore, the issue in *Satterlee* was whether the State had exclusive ownership of the disposal facilities. The statute at issue here does not require the City to have exclusive ownership. Were appellants to prevail, any lessee could be said to have an equitable interest subject to taxation based on its "benefit" of possession. Such is not the law.[5]

---

[5] Leasehold interests are clearly taxable. *See* Tex. Tax Code Ann. § 25.07 ("a leasehold or other possessory interest in real property that is exempt from taxation to the owner of the estate or

We are similarly not persuaded by TCAD's argument that appellees' right to "sell" the facilities under the leases evidences a taxable ownership interest in them. Indeed, appellees do have an ownership interest here, but it is an ownership interest in a *leasehold*. Because the City owns the improvements but leases them to appellees, it is perfectly correct to refer to appellees' ownership interests in the leased facilities and allow them the right to "sell" that leasehold interest. *See Panola County Fresh Water Supply Dist. No. 1 v. Panola County Appraisal Dist.*, 69 S.W.3d 278, 284 (Tex. App.—Texarkana 2002, no pet.) ("An ownership interest in a leasehold is the legal right to possess that property for a set period of time . . . [which] has a measurable fair market value because there are people who are willing to purchase and do purchase that right to possess the property under the terms of the lease.").

Here, the lease agreements clearly and unambiguously state that the City holds legal title to the improvements after it accepts them. Appellees do not have equitable title, for they have no grounds to compel the City to give them legal title; they may merely operate and use the facilities in accordance with the lease terms. Nor do they have any other beneficial interest that trumps the City's ownership as the holder of legal title. Any further language in the leases with respect to payment of taxes, ability to sell the facilities, or complete vestment in the City at the end of the lease term does not detract from the City's legal title or create an ambiguity. Contracts must be read as a whole to harmonize the provisions. *See Coker*, 650 S.W.2d at 393. The tax provision does not

interest encumbered by the possessory interest shall be listed in the name of the owner of the possessory interest if the duration of the interest may be at least one year"). It is only because the facilities happen to be part of a public transportation facility that there is a dispute before us. If they were part of a non-exempt facility, they would clearly be taxable under section 25.07, even though owned by the City. *See id.*

11

specifically refer to property taxes; it could have concerned sales taxes, franchise taxes, or personal-property taxes. Nor would it be dispositive even if it had referenced property taxes—it may merely have been an exercise in caution by the City. The right to sell the facilities is best read as the right to sell a marketable interest in the leasehold. Finally, appellees' exclusive right to possession until the end of the lease term, when the City's ownership interest would become completely vested, does not make the lessees the owners of the facilities for taxation purposes.

We note other provisions in the leases consistent with appellees' holding a leasehold, not an ownership interest: (1) the rent increased 400% (from $0.045 per square foot per year to $0.18 per square foot) on the date of beneficial occupancy, which is when the City accepted the facilities;[6] (2) the City was to bear the costs of replacement facilities if it required appellees to relocate their operations during the lease term; and (3) Signature and Austin Aero were required to maintain various types of insurance on the improvements, including a fire and casualty ("all risk of physical loss") policy covering one-hundred percent of the improvements' value, the proceeds from which were to be used "to restore the improvements to their original condition in the event of a loss covered by the policy." Each of these additional provisions is inconsistent with appellees' ownership interest in the improvements and gives further evidence of the City's ownership. Thus, the other provisions in the leases do not contradict the parties' expressed intent that the City own the facilities but, rather, reinforce that conclusion.[7]

---

[6] If appellees owned the improvements, it is unlikely that they would have agreed to a 400% increase in their lease payments to "rent" property that they already owned.

[7] TCAD also cites lease provisions requiring appellees to use straight-line depreciation over the term of the lease to deduct their construction costs and summary-judgment evidence in the form of federal tax records indicating that appellees took depreciation deductions on the facilities,

12

*The subleases*

The sublease between Signature and Triple S provides that upon completion of the hangar facility, "Signature shall convey and deliver unto Triple S title, ownership, and possession of the Hangar Facility and the improvements located thereon," that during the term of the sublease, "title and ownership of the Hangar Facility shall be vested solely with Triple S," and that "Triple S shall be responsible for the . . . payment of any and all applicable taxes or assessments against the Hangar Facility, including, but not limited to, all real estate taxes, possessory interest taxes, ad valorem taxes and assessments." The Austin Aero sublease with R & J provides that "all permanent improvements and fixtures installed by Sublessee shall become the property of the City of Austin (Landlord under the Austin Aero Lease) upon the termination of this Sublease, unless otherwise agreed in writing," that "if the Improvements located on the Subleased Premises are damaged or destroyed . . . Sublessee, in its sole and absolute discretion, may elect to restore the Improvements to its [sic] former condition or elect to terminate this Sublease," that R & J will pay any property taxes or ad valorem taxes assessed against the subleased premises, and that R & J would be entitled

---

evidencing an ownership interest. We reject this argument, because taking a depreciation deduction is fully consistent with a long-term lease of land requiring the lessee to construct improvements. *See McGrath v. Commissioner*, 84 T.C.M. (CCH) 310, 314 (2002) ("Where the owner of real property enters into a long-term lease, under the terms of which the lessee is to construct at his own cost a building on the property, the lessee, not the lessor, is entitled to a deduction for the depreciation of the building. . . . [The lessee's] right to the deductions is not altered by the fact that, under doctrines of local law, legal title to the improvements may reside in the lessor. In such situations, it is the lessee, not the lessor, who suffers the economic loss as the property deteriorates, and who is entitled to the statutory allowance.") (quoting *Currier v. Commisioner*, 51 T.C. 488, 492 (1968)), *aff'd*, 2003 U.S. App. LEXIS 18669 (5th Cir. Sept. 9, 2003).

to participate in any condemnation award to the extent of its interest in the subleased premises and improvements if the premises were condemned or taken by eminent domain.

Regardless of such language in the subleases, Signature and Austin Aero, as non-owners of the facilities and mere lessors from the City, could not have conveyed or assigned to Triple S and R & J any rights or interests greater than those they possessed. *See Collora v. Navarro*, 574 S.W.2d 65, 70 (Tex. 1978). Because we have concluded that the City is the owner of the improvements, it necessarily follows that by subleasing to Triple S and R & J the right and responsibility to construct some of those facilities, Signature and Austin Aero could not have transferred title to the improvements to their sublessees.[8]

We hold that the lease agreements are not ambiguous concerning ownership of the improvements, and that the summary-judgment evidence before the trial court established the ownership of the improvements in the City once the City accepted the facilities, which it did no later than 2000. Because there is no ambiguity in the leases to contradict the clear language that "Legal title to Facilities constructed by Tenant shall be held by the City after acceptance of the Facilities," we find that no genuine issue of material fact exists concerning ownership of the improvements. Therefore, as a matter of law, the City is the owner of the improvements as of the date it accepted them, and thus the facilities are tax exempt. The trial court properly ordered TCAD to remove appellees from the appraisal rolls. We overrule TCAD's first issue.

---

[8] The subleases both provided that they were subject and inferior to the City of Austin leases.

14

*Evidentiary issue*

TCAD next asserts that the trial court erred in overruling its objections to summary-judgment evidence in the form of an affidavit of Thomas Mathew, president of Austin Aero's general partner, and the affidavit's attachments. TCAD argues that the attachments—certificates of occupancy issued by the City indicating certain facilities as acceptably constructed—are inadmissible hearsay and contain improper legal conclusions concerning the ownership of the improvements.[9] *See* Tex. R. Evid. 802. Thus, maintains TCAD, the attachments were inadmissible, as well as the affidavit, which incorporated by reference the certificates.

We apply an abuse-of-discretion standard in reviewing whether a district court erred in admitting or excluding evidence. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). We will reverse only when we find that the trial court "acted in an unreasonable or arbitrary manner," *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991), or "without regard for any guiding rules or principles," *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998) (quoting *Alvarado*, 897 S.W.2d at 754). If any legitimate basis exists to support a district court's evidentiary ruling, then we must uphold the court's decision. *Owens-Corning*, 972 S.W.2d at 43; *State Bar v. Evans*, 774 S.W.2d 656, 658 n.5 (Tex. 1989). Summary-judgment evidence must be presented in a form that would be admissible in a conventional trial proceeding. *United Blood Servs. v. Longoria*, 938 S.W.2d 29, 30 (Tex. 1997). Also, an affidavit consisting of legal conclusions does not establish an issue of fact and is not entitled to evidentiary consideration. *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996). To constitute competent summary-judgment evidence, affidavits must be made on personal knowledge, setting forth such facts as would

---

[9] The certificates listed the "owner" of the facilities as "the City of Austin."

15

be admissible in evidence, and must affirmatively show that the affiant is competent to testify to matters stated therein. Tex. R. Civ. P. 166a(f); *Ryland Group*, 924 S.W.2d at 122.

Austin Aero and R & J contend that although the certificates note the "owner" of the facilities as "the City of Austin," they were not offered for the truth of that matter, but rather to show that the City had accepted the facilities by virtue of issuing the certificates. The certificates were therefore not hearsay in the first place. TCAD has not contested the fact that the City accepted the facilities. In the alternative, they assert that the affidavit and certificates were properly admissible under either of two exceptions to the hearsay rule: as a public record or as a statement affecting an interest in property. *See* Tex. R. Evid. 803(8), (15).

We agree that the certificates of occupancy were not offered for the truth of the legal conclusions contained in them—that the City was the owner of the improvements—but rather to signify that the City had accepted the facilities. The certificates and affidavit referencing them were thus not hearsay. Even if they were, we agree that the certificates are a public record or statement of a public office or agency "setting forth . . . the activities of the office or agency," in that they memorialize the City's issuance of certificates of occupancy to the lessees of the facilities. *See* Tex. R. Evid. 803(8). The affidavit and the certificates—if hearsay—were thus admissible, and the trial court did not abuse its discretion. We need not determine whether they fell under another hearsay exception. We overrule TCAD's third issue.

### *Remedy*

In its final issue, TCAD urges that in the event we uphold the trial court's legal conclusion regarding ownership, we should reverse and remand this cause because the court's

16

judgment granted more relief than was requested in appellees' respective motions for summary judgment. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 202 (Tex. 2001); *Walton v. City of Midland*, 24 S.W.3d 853, 857 (Tex. App.—El Paso 2000, no pet.). Specifically, TCAD asserts that Signature requested merely that its name be removed from the tax rolls for 2001, while the other three appellees sought removal from the rolls for tax years 2001 and 2002. Yet, the summary judgment orders TCAD to "remove plaintiffs from defendant Apprisal District's appraisal roll for the tax years 2001, 2002, and 2003."

TCAD cites *Lehmann* as support because of its statement, "[i]f the judgment grants more relief than requested, it should be reversed and remanded." 39 S.W.3d at 202 (quoting *Mafrige v. Ross*, 866 S.W.2d 590, 592 (Tex. 1993)). However, that statement was made in the context of the finality and appealability of summary judgments, particularly clauses proclaiming that all relief not expressly granted is denied, which is not at issue here. *See id.* at 202, 205. Although *Lehmann* and some other cases use general language asserting that a trial court cannot grant more relief than was requested by a motion for summary judgment and that one that does so is subject to reversal, those cases are inapplicable to our facts.[10]

---

[10]  *See, e.g.*, *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex. 1997); *Young v. Hodde*, 682 S.W.2d 236, 236-37 (Tex. 1984); *Muston v. Nueces County Sheriff's Dep't*, 122 S.W.3d 469, 472-73 (Tex. App.—Corpus Christi 2003, no pet.) (appellee's summary-judgment motion had not addressed appellant's cause seeking review of agency decision but only appellant's other claims, and court's summary judgment therefore erred in dismissing appellant's appeal; also, summary judgment granted in favor of appellee who had not filed summary-judgment motion was error); *Mary Kay Cosmetics, Inc. v. North River Ins. Co.*, 739 S.W.2d 608, 611 (Tex. App.—Dallas 1987, no writ); *see also Walton v. City of Midland*, 24 S.W.3d 853, 862 (Tex. App.—El Paso 2000, no pet.) (summary-judgment motion addressing only permanent damages could not support judgment on temporary damages); *Steinkamp v. Caremark*, 3 S.W.3d 191, 198 (Tex. App.—El Paso 1999, pet. denied) (summary-judgment motion asserting no evidence as to only one of plaintiff's causes of action for damages did not warrant summary judgment on other causes).

Here, the primary issue was whether appellees owned the improvements on the leased premises. The trial court determined that the City owned the facilities, making them tax exempt. Barring evidence indicating a transfer of ownership from the City to appellees or some other party after the City had accepted the improvements pursuant to the leases, a court's determination as to who is the owner of the improvements for tax year 2001 would be dispositive as to tax years 2002, 2003, and any later year.

Furthermore, our review of the record indicates that each appellee requested in the prayer section of its summary-judgment motion that the improvements in question be removed from the appraisal rolls and that it be awarded "such other and further relief" to which it showed itself entitled. We conclude that this was a sufficient request for a final resolution of the legal question at issue, and the trial court properly fashioned a remedy in accordance with appellees' requests. *See Holmstrom v. Lee*, 26 S.W.3d 526, 532-33 (Tex. App.—Austin 2000, no pet.) (relief consistent with facts and pleaded theories may be granted under general prayer). We overrule TCAD's second issue.

## CONCLUSION

Under the lease agreements, the City unambiguously holds legal title to the improvements. Appellees hold merely a leasehold interest in the improvements; they do not hold equitable title or a beneficial interest that could compel the City to turn over legal title. Therefore, the improvements are tax exempt. Further, the trial court did not abuse its discretion in admitting appellees' summary-judgment evidence and did not grant more relief than was requested by

18

appellees.  We affirm the summary judgment ordering TCAD to remove the improvements in the name of appellees from its tax rolls.

_____

Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Affirmed

Filed:   July 1, 2004