

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-24-00016-CV
_____

HUNT COUNTY APPRAISAL DISTRICT, Appellant

V.

LAKE TAWAKONI WIND POINT PARK CORPORATION, Appellee

On Appeal from the 196th District Court
Hunt County, Texas
Trial Court No. 91947

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

MEMORANDUM OPINION

Lake Tawakoni Wind Point Park Corporation (LT Corp.) filed a lawsuit challenging two orders determining its protests for taxes on improvements assessed by the Hunt County Appraisal District (HCAD) for the 2022 and 2023 tax year. *See* TEX. TAX CODE ANN. §§ 42.01, 42.21 (Supp.). In its lawsuit, LT Corp. complained that the HCAD improperly assessed property taxes on improvements made to property belonging to the Sabine River Authority (Sabine), an entity exempted from paying ad valorem property taxes. In response, the HCAD noted that Sabine had granted LT Corp. a permit to manage, operate, and maintain the improvements and argued it was taxing LT Corp.'s leasehold or possessory interest in the property and not Sabine's property. Following cross-motions for summary judgment, the trial court agreed with LT Corp., granted its traditional motion for summary judgment on the issue, and entered a final judgment finding that the HCAD's assessments were "not taxable to [LT Corp.] in tax years 2022 and 2023."

On appeal, the HCAD argues that the trial court erred by granting LT Corp.'s motion for summary judgment while denying its motion for summary judgment. Because we find that LT Corp.'s permit was a license, not a leasehold or possessory interest in land, we conclude that the trial court's summary judgment rulings were proper. As a result, we affirm the trial court's judgment.

I.      **Factual Background**

The Sabine River Authority was created in 1949. It is undisputed that Sabine is a political subdivision of the State. *See* TEX. CONST. art. XVI, § 59; *City of Dallas v. Sabine River*

*Auth. of Tex.*, No. 03-15-00371-CV, 2017 WL 2536882, at *1 (Tex. App.—Austin June 7, 2017, no pet.) (mem. op.). Section 11.11(a) of the Texas Tax Code exempts "property owned by this state or a political subdivision of this state . . . from taxation if the property is used for public purposes." TEX. TAX CODE ANN. § 11.11(a). The Texas Constitution also contains an exemption from taxation for public property used for public purposes. *See* TEX. CONST. art. VIII, § 2.

It is also undisputed that Sabine owns the fee interest in Lake Tawakoni Wind Point Park (Park), a "180[-]acre recreational park operated and open for public use in Hunt County." In years past, Sabine used to handle the "day-to-day maintenance and operation of recreational facilities at the Park." More recently in its history, Sabine took advantage of the Texas Legislature's grant to districts, like Sabine,[1] of permission to contract with third parties "for the joint construction . . . and operation of any works, [or] improvements," or for the "performance of any purpose or function permitted by a district." TEX. WATER CODE ANN. § 49.213(a)–(b); *see Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 836 (Tex. 2010). "A district may [also] lease any of its property, real or personal, to any person." TEX. WATER CODE ANN. § 49.225.

The affidavit of Ryan Fergus, LT Corp.'s president, established that LT Corp. underwent a proposal process in response to Sabine's request for bidders to operate the Park. In 2014, Sabine granted LT Corp. a "Commercial Limited Use Permit" (Permit) to "establish, operate, and maintain a recreational land use operation in accordance with the Permitted Use," which was

---

[1]Sabine qualifies as a district for purposes of the Texas Water Code. *See* TEX. WATER CODE ANN. § 49.001(a)(1); *Pitts v. Sabine River Auth. of Tex.*, 107 S.W.3d 811, 813 (Tex. App.—Texarkana 2003, pet. denied).

defined as "Recreational/RV Park." *See id.* The Permit allowed LT Corp. to "[u]tilize the [Park] in strict accordance with the Permitted Use and none other." It also stated that "[a]ll improvements and/or alterations to the [Park] must be approved in writing by [Sabine]."

According to LT Corp., the HCAD had never taxed anyone on the improvements made to the Park until the 2022 tax year, when it sent LT Corp. a $48,743.50 bill for taxes assessed on the value of improvements to the Park. Taxes were also assessed by the HCAD for the 2023 tax year. LT Corp. filed protests with the Hunt County Appraisal Review Board but failed to succeed on its claim that no taxes should have been assessed. *See* TEX. TAX CODE ANN. § 41.41(a)(1) (Supp.).

After filing its lawsuit, LT Corp. filed a motion for summary judgment, which had attached as evidence the Permit and the affidavit of David Montagne, the executive vice president and general manager of Sabine, both of which showed that Sabine owned the real property where the Park was situated. Montagne added that LT Corp. "ha[d] performed its duties under the Permit for the benefit of [Sabine] and in place of [Sabine] performing th[o]se exact duties itself as required to operate the Park for public purposes."

The HCAD filed its own motion for summary judgment, arguing that it was not taxing Sabine's interest in the Park, only LT Corp.'s "leasehold or possessory interest," which was not owned by Sabine. That argument was made pursuant to Section 25.07(a) of the Texas Tax Code, which states, "[A] leasehold or other possessory interest in real property that is exempt from taxation to the owner of the estate . . . shall be listed in the name of the owner of the possessory interest if the duration of the interest may be at least one year." TEX. TAX CODE ANN. § 25.07(a)

4

(Supp.). HCAD further argued that LT Corp. was a "private, for-profit corporation" that accepted fees for the public's use of the Park and its amenities.

LT Corp. responded to HCAD's argument by stating that it merely had a limited license with respect to the property, not any leasehold or possessory interest. LT Corp. attached its appraisal card showing that HCAD had listed the property being taxed as "Improvement[s]," including improvements it described as an office, boat dock, and RV sites, among others.

After hearing the parties' arguments, the trial court granted LT Corp.'s motion for summary judgment, denied HCAD's motion, and ordered the HCAD to (1) correct the appraisal roll to reflect that the Park "is not taxable to [LT Corp.] in tax years 2022 and 2023; and (2) refund [LT Corp.] . . . the full amount of all tax[es] paid by [it]."[2]

## II.    Standard of Review and Applicable Law

An appellate court reviews de novo the grant or denial of a motion for summary judgment. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). "The party moving for traditional summary judgment bears the burden of showing no genuine issue of material fact exists and it is entitled to judgment as a matter of law." *State Farm Mut. Auto. Ins. Co. v. Rumbaugh*, 642 S.W.3d 901, 903 (Tex. App.—Texarkana 2022, pet. denied) (quoting *Banta Oilfield Servs., Inc. v. Mewbourne Oil Co.*, 568 S.W.3d 692, 700 (Tex. App.—Texarkana 2018, pet. denied)). Where, as here, both parties file motions for summary judgment and the trial court grants one and overrules the other, we consider both sides' summary

---

[2]For the first time on appeal, the HCAD has raised a question of LT Corp.'s standing to sue. It argues that, in general, only a property owner has standing to sue. *See* TEX. TAX CODE ANN. § 42.01(a). The HCAD listed LT Corp. as the property owner in its tax rolls, giving LT Corp. standing to sue. *See id.*; TEX. TAX CODE ANN. § 41.41 (Supp.).

judgment evidence and determine all questions presented, and if the trial court erred, we render the judgment the trial court should have rendered. *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007); *Rumbaugh*, 642 S.W.3d at 903–04.[3]

In addition to the summary judgment standard of review, we must also be mindful of principles applicable to the construction of statutes in the Texas Tax Code. For example, the general rule is that "[s]tatutes imposing a tax must be strictly construed against the taxing authority and liberally construed in favor of the taxpayer." *Gables Realty Ltd. P'ship v. Travis Cent. Appraisal Dist.*, 81 S.W.3d 869, 872 (Tex. App.—Austin 2002, pet. denied) (citing *Upjohn Co. v. Rylander*, 38 S.W.3d 600, 606 (Tex. App.—Austin 2000, pet. denied)). "Exemptions, on the other hand, are matters of legislative 'grace.'" *Id.* (citing *Comm'r v. Sullivan*, 356 U.S. 27, 28 (1958)). "[T]o promote uniformity and equality in taxation, we construe tax exemptions— and provisions tantamount to tax exemptions—strictly against the taxpayer and in favor of the taxing authority." *Id.* (alteration in original) (quoting *Tex. Utils. Elec. Co. v. Sharp*, 962 S.W.2d 723, 726 (Tex. App.—Austin 1998, pet. denied)). As a result, "an exemption cannot be raised by implication[] but must affirmatively appear." *I-10 R.V., L.L.C. v. Jefferson Cnty. Appraisal Dist.*, No. 09-20-00166-CV, 2022 WL 1177610, at *10 (Tex. App.—Beaumont Apr. 21, 2022, no pet.) (mem. op.) (alteration in original) (quoting *Odyssey 2020 Acad., Inc. v. Galveston Cent. Appraisal Dist.*, 624 S.W.3d 535, 540 (Tex. 2021)). "The taxpayer has the burden to 'clearly

---

[3]To the extent that the appellate briefing can be read to include issues or grounds not raised before the trial court, we will not consider them. *See* TEX. R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal.").

show' that an exemption applies, and all doubts are resolved against the granting of an exemption." *Id.* (quoting *Odyssey 2020 Acad., Inc.*, 624 S.W.3d at 540).

**III.     The Trial Court's Summary Judgment Was Proper**

On appeal, HCAD argues that it is entitled to tax LT Corp.'s leasehold or possessory interest in the Park. It is true that "the law generally taxes the property owner on the value of the fee estate, regardless of whether the land is leased to another party." *Gables Realty Ltd. P'ship*, 81 S.W.3d at 874–75 (citing TEX. TAX CODE ANN. § 25.06 ("Except as provided by Section 25.07, property encumbered by a leasehold . . . shall be listed in the name of the owner of the property so encumbered.")). "Section 25.07 is an exception to the general rule that leasehold interests are typically subsumed and taxed as part of a fee estate; thus, only when the fee estate is exempt from taxation does [S]ection 25.07 become operative to authorize taxation of the leasehold estate." *Id.* at 875 (citing TEX. TAX CODE ANN. § 25.07). Here, it is undisputed that the fee estate, belonging to Sabine, is exempt under Section 11.11 of the Texas Tax Code because it is "property owned by . . . a political subdivision of this state" and "the property is used for public purposes." TEX. TAX CODE ANN. § 11.11(a). As a result, we move from Section 11.11 to Section 25.07 of the Texas Tax Code.

Under Section 25.07, "if the property is leased and the fee remains exempt, the non-exempt leasehold becomes the taxable estate." *Gables Realty Ltd. P'ship*, 81 S.W.3d at 875 (citing *Cnty. of Dallas Collector v. Roman Catholic Diocese of Dallas*, 41 S.W.3d 739, 744 (Tex. App.—Dallas 2001, no pet.) ("Unless the leasehold involves exempt property, the leasehold is not independently taxed, but rather, it is subsumed within the value of the fee simple estate.")).

7

Section 25.07 also allows taxation of a "[p]ossessory interest" in land, which is defined by the Texas Tax Code as "an interest that exists as a result of possession or exclusive use or a right to possession or exclusive use of a property and that is unaccompanied by ownership of a fee simple or life estate in the property." TEX. TAX CODE ANN. § 1.04(16) (Supp.).

While we strictly construe LT Corp.'s claimed exemption under Section 11.11 in favor of HCAD, we must also determine whether Section 25.07 applies. Therefore, the answer to the questions presented on appeal, and the crux of this case, turns on whether the Permit granted by Sabine to LT Corp. is a "leasehold or other possessory interest in real property," or a license. TEX. TAX CODE ANN. § 25.07(a).

A lease is "a grant of an estate in land for a limited term." *Holcombe v. Lorino*, 79 S.W.2d 307, 310 (Tex. 1935). In general, "[a] lease grants a tenant exclusive possession of the premises as against the owner."[4] *H.E.Y. Tr. v. Popcorn Express Co.*, 35 S.W.3d 55, 58 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *see also Tarrant Reg'l Water Dist. v. Granger*, No. 02-23-00195-CV, 2024 WL 1100786, at *3 (Tex. App.—Fort Worth Mar. 14, 2024, no pet.) (mem. op.). "A 'real property license[,'] however, is 'a privilege to go on premises for a certain purpose, but does not operate to confer on, or vest in, [the] licensee any title, interest or estate in such property.'" *H.E.Y. Tr.*, 35 S.W.3d at 58 (quoting BLACK'S LAW DICTIONARY 920 (6th ed.

---

[4]We recognize that "exclusive possession is not a requirement for every lease" because "a landlord may reserve rights of possession and entry in the terms of the lease." *M.G. Bldg. Materials, Ltd. v. C & K Materials Co.*, No. 04-03-00401-CV, 2003 WL 21918592, at *3 (Tex. App.—San Antonio Aug. 13, 2003, no pet.) (mem. op.). "[T]he [Texas] Supreme Court [has] held that one of the essential elements of a valid lease is the *transfer* of exclusive possession, not the existence of exclusive possession." *Woodmark Austin Ltd. P'ship v. Coinamatic, Inc.*, No. 07-07-00054-CV, 2007 WL 4339724, at *2 (Tex. App.—Amarillo Dec. 11, 2007, no pet.) (mem. op.) (citing *Brown* v. *Johnson*, 12 S.W.2d 543 (Tex. [Comm'n Op.] 1929)). Here, we find that there was no transfer of exclusive possession in the Park.

1990)). As a result, a license conveys no interest in property. *Id.*; *see Granger*, 2024 WL 1100786, at *3 (citing *Mr. W Fireworks, Inc. v. Alamo Fireworks, Inc.*, No. 04-04-00934-CV, 2005 WL 2216501, at *2 (Tex. App.—San Antonio Sept. 14, 2005, no pet.) (mem. op.)).

To determine the character of the Permit, which was an agreement between Sabine and LT Corp., we must construe it properly. "In construing an agreement, the primary focus is to ascertain and give effect to the intentions of the parties as expressed in their agreement." *Granger*, 2024 WL 1100786, at *3 (citing *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998); *Fairfield Indus. v. EP Energy E&P Co.*, 531 S.W.3d 234, 241 (Tex. App.—Houston [14th Dist.] 2017, pet. denied)). "A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation." *Id.* (citing *Fairfield Indus.*, 531 S.W.3d at 241). Ambiguity, however, may not be declared in haste: "[a] limited examination may yield reasonable, conflicting interpretations, but only when one interpretation does not clearly emerge as correct after a full examination is a contract ambiguous and the determination of its meaning left to a jury." *Bd. of Regents of Univ. of Tex. Sys. v. IDEXX Lab'ys, Inc.*, 691 S.W.3d 438, 445 (Tex. 2024).

"[W]hen a written contract is worded so that it can be given a certain or definite legal meaning or interpretation, it is unambiguous, and we construe it as a matter of law." *Granger*, 2024 WL 1100786, at *3 (citing *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003)). "We must enforce an unambiguous contract as written." *Id.* "Our role is not to question the wisdom of the parties' agreement or to rewrite its provisions under the guise of interpreting it." *Id.* "We give each term in an agreement its plain, ordinary, and generally accepted meaning

9

unless the agreement itself shows the term to be used in a technical or different sense." *Id.* (citing *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121–22 (Tex. 1996)). "We examine the entire agreement to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless." *Id.* (citing *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999)).

The Texas Supreme Court recently summarized it this way: "[t]he teaching of these authorities is that in interpreting a contract, we ascertain and give effect to the parties' intent expressed in the text, read without rendering any portion meaningless, and not in the abstract but in the context in which the words appear and were written—the realities they were meant to address." *IDEXX Lab'ys, Inc.*, 691 S.W.3d at 445.

The Permit, having an original term of twenty years, defines the Premises as the "SURFACE ONLY of approximately 180 acres of land, known as **Wind Point Park**." The Permit granted LT Corp. a "Permit on the Premises, with the right to establish, operate, and maintain a recreational land use operation in accordance with the Permitted Use." The Permitted Use was defined as "Recreational/RV Park." Under the Permit, LT Corp. was required to use "the Premises in strict accordance with the Permitted Use and none other." As a result, the Permit does not allow LT Corp. to possess the Park for any purpose; by its express terms, the Permit only allows LT Corp. to go on the Premises for a certain purpose, which is a defining characteristic of a license as opposed to a leasehold.

For example, LT Corp. was required to "[m]aintain all grounds including but not limited to mowing, edging, trimming, fencing, as well as cleaning exterior of all facilities and trash

10

removal" and to "[m]aintain the interiors and exteriors of all facilities including[,] but not limited to[,] furnishings, fixtures, repairing plumbing leaks (water and sewer)[,] replacing damaged window screens and glass panes, changing air conditioner filters, and performing electrical and other repairs" that were "needed to keep the park and facilities functional, attractive and in a good state of repair." LT Corp. could not "[a]lter the Premises without first obtaining [Sabine's] written consent." Those terms ensured that the Park was used for a public purpose.

Next, nothing in the Permit stated that LT Corp.'s rights of possession were exclusive. The Permit stated that Sabine "retains the right to permit third parties to use the Premises for other uses that do not interfere with [LT Corp.'s] Permitted Use." Under the Permit, Sabine retained the right "[t]o have access to the Premises and each [and] every part thereof at all reasonable times for the purpose of inspecting the same and making such repairs as [Sabine] shall determine are necessary and reasonable." Sabine also had the right to "[t]o use all or any portion of the Premises for any . . . purposes or uses as may be necessary in carrying out the statutory duties and responsibilities of [Sabine]." Further, the Permit gave Sabine the right "[t]o terminate all rights of [LT Corp.] hereunder for any reason, if at such time it be determined by [Sabine] that use of said Premises is required by [Sabine]."

In exchange for the Permit, LT Corp. paid fees in accordance with Sabine's Commercial Limited Use Land Permit Fee Schedule. Sabine retained the right to increase or decrease its permit fees. Under the Permit, LT Corp. was required to "[p]ay all taxes on [LT Corp.'s]

11

personal property located on the Premises," but the Permit did not mention the payment of any real property taxes.[5]

We reject the HCAD's argument that the Permit created a leasehold interest. In our view, a plain reading of the Permit shows that Sabine did not intend to transfer possession to LT Corp. *Vallejo v. Pioneer Oil Co.*, 744 S.W.2d 12, 15 (Tex. 1988) (per curiam) ("This agreement contains no terms which reflect an intention on the part of [a lessor] to transfer an interest in and possession of the property it describes."). This is because while "no particular words are necessary" "[t]o create the relationship of landlord and tenant . . . it is indispensable that it should appear to have been the intention of one party to dispossess himself of the premises and of the other to occupy them." *Id.* (quoting *Brown*, 12 S.W.3d at 545). Here, the granting clause contained the following language: "<u>Grant</u>. [Sabine] hereby grants [LT Corp.] this Permit on the Premises." While the Permit granted LT Corp. the ability to possess the property *for a limited use*, it did not contain any provision by which Sabine dispossessed itself of the property. *See id.*[6]

"A property owner's right to exclude others from his or her property is recognized as "'one of the most essential sticks in the bundle of rights that are commonly characterized as property.'"" *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002) (quoting

---

[5]The Permit also stated that, "[u]pon termination of [the] Permit, any physical additions or improvements to the [Park] made by [LT Corp.] w[ould] become the property of [Sabine]." We do not read that provision to mean that improvements on the property belonged to LT Corp. instead of Sabine. The Permit also provided that, if Sabine terminated it "for reasons other than an event of default by [LT Corp.]," "[Sabine] shall compensate [LT Corp.] for improvements made by [LT Corp.] to the Premises which cannot be reasonably removed without damaging the Premises, based on the then current fair market value of such improvements as determined by a licensed appraiser selected by [Sabine]."

[6]HCAD argues that LT Corp. should not be entitled to any tax exemption because it made a profit and collected fees from the public. "That the property in question is revenue-producing . . . does not mean that it is not held only for public purposes nor that it is any the less devoted exclusively to the use and benefit of the public." *Lower Colorado River Auth. v. Chem. Bank & Tr. Co.*, 190 S.W.2d 48, 50 (Tex. 1945).

*Dolan v. City of Tigard*, 512 U.S. 374, 384 (1994)). "It is well-settled that a lease is valid only if it confers upon the lessee the right to exclusive possession or occupancy of the premises described in the granting clause." *Mr. W Fireworks, Inc. v. Alamo Fireworks, Inc.*, No. 04-04-00934-CV, 2005 WL 2216501, at *2 (Tex. App.—San Antonio Sept. 14, 2005, no pet.) (mem. op.). Here, the granting clause conveyed a permit, not an interest in land. The Permit did not state that LT Corp. would have exclusive possession of the Park. Instead, it contained a provision by which Sabine could use the Park, allow third parties on the Park, and terminate the Permit at any time.

After reviewing the Permit, we find the intent of the parties to be clear. First, "[t]he document is described as a permit, not a lease." *Granger*, 2024 WL 1100786, at *5.[7] It unequivocally stated that LT Corp. was receiving a right to use Sabine's property for a limited time and purpose. *See id.* As a result, we find that the Permit was a license that failed to convey a leasehold or possessory interest in land.[8] *See id.*; *see also Krohn*, 90 S.W.3d at 700 ("Unlike a possessory interest in land, an easement is a nonpossessory interest that authorizes its holder to use the property for only particular purposes.").[9]

---

[7]A permit is "a license, certificate, approval, registration, consent, permit . . . or other form of authorization required by law, rule, regulation, order, or ordinance that a person must obtain to perform an action or initiate, continue, or complete a project for which the permit is sought." TEX. LOC. GOV'T CODE ANN. § 245.001(1).

[8]The HCAD cites several cases in which there is no dispute that a leasehold interest was created. *See Odyssey 2020 Acad., Inc. v. Galveston Cent. Appraisal Dist.*, 624 S.W.3d 535, 541 (Tex. 2021); *Gables Realty Ltd. P'ship*, 81 S.W.3d at 870; *Wackenhut Corrs. Corp. v. Bexar Appraisal Dist.*, 100 S.W.3d 289, 290 (Tex. App.—San Antonio 2002, no pet.); *Tarrant Appraisal Dist. v. Am. Airlines, Inc.*, 826 S.W.2d 767, 768 (Tex. App.—Fort Worth 1992, writ denied). That is not the case here.

[9]This finding is consistent with the Texas Water Code authorization that Sabine had the authority to contract with third parties to step into its shoes for the performance of district functions. *See* TEX. WATER CODE ANN. § 49.213(a).

13

Because the Permit was not a leasehold or possessory interest in land, we find that Section 25.07 does not apply. "Under the tax code, appellees must be the 'owner' of the facilities, as that term has been defined in Texas law." *Travis Cent. Appraisal Dist. v. Signature Flight Support Corp.*, 140 S.W.3d 833, 841 (Tex. App.—Austin 2004, no pet.). "Whatever possessory interests [LT Corp. had], they do not include the right to compel" either legal or equitable title. *Id.* As a result, they are "not the owners" for purposes of the Texas Tax Code. *Id.*

LT Corp. carried the burden to establish its exemption under Section 11.11(a) of the Texas Tax Code. The summary judgment evidence, including Montague's affidavit, conclusively proved that the Park was owned by the State and that LT Corp. had no leasehold or possessory interest in the land. LT Corp. showed that the Park was "property owned by . . . a political subdivision of this state . . . used for public purposes." TEX. TAX CODE ANN. § 11.11(a).[10] Accordingly, we find that the trial court's summary judgment in favor of LT Corp. was proper.

Moreover, we also find that the trial court properly denied the HCAD's motion for summary judgment. HCAD argued that it was seeking to tax LT Corp.'s interest in the Park, not

---

In our view, the Permit's language and Montague's affidavit show that Sabine granted a permit to LT Corp. under the provisions of Section 49.213 and not a lease under Section 49.225. *See* TEX. WATER CODE ANN. §§ 49.213, 49.225.

[10]Under Section 11.11(d) of the Texas Tax Code,

> Property owned by a state agency or institution is not used for public purposes if the property is rented or leased for compensation to a private business enterprise to be used by it for a purpose not related to the performance of the duties and functions of the state agency or institution.

TEX. TAX CODE ANN. § 11.11(d). Here, summary judgment evidence showed that the property was not leased or rented and that LT Corp. only had the right to enter the Park for purposes related to Sabine's performance of its duties and functions.

the value of improvements on the land. The tax bill sent by the HCAD, though, listed the value of the improvements as "$2,600,000," and the value of the land as "$0." The taxes due were calculated by applying the tax rates for Hunt County, a hospital district, and a school district to the assessed value of the improvements. We have already determined that LT Corp. had no leasehold or possessory interest in the Park. Regardless, "[a] leasehold, which is the possessory interest in real property in which the owner of the fee simple is exempt from taxation, is appraised *at market value of the leasehold*." *Panola Cnty. Appraisal Dist. v. Panola Cnty. Fresh Water Supply Dist. No. One*, 69 S.W.3d 278, 282 (Tex. App.—Texarkana 2002, no pet.) (footnotes omitted) (citations omitted) (citing Tex. Tax Code Ann. § 23.13). A review of the summary judgment evidence showed that the HCAD was seeking to tax the value of improvements on the property, not the value of the leasehold, and that there was no evidence of any fair-market value of LT Corp.'s alleged leasehold interest. Accordingly, the trial court properly found that the HCAD was not entitled to summary judgment.

We conclude that the trial court correctly resolved the cross-motions for summary judgment. As a result, we overrule the HCAD's points of error.

## IV. Disposition

We affirm the trial court's judgment.

Jeff Rambin
Justice

Date Submitted:      September 10, 2024
Date Decided:       October 28, 2024

15