Affirmed in Part, and Reversed and Remanded in Part, and Opinion filed October 8,
2009.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00254-CV

____________

 

WARWICK TOWERS COUNCIL OF
CO-OWNERS, by and through St. Paul Fire & Marine Insurance Company, Appellant

 

V.

 

PARK WARWICK, L.P., PARK WARWICK
INVESTMENTS, L. L.C., and PARK HOTEL INVESTMENTS, L. L.C., Appellees

 



 

On Appeal from the 113th
District Court

Harris County, Texas

Trial Court Cause No. 03-31949

 



 

O P I N I O N   ON   R E M A N D

Warwick Towers Council of Co-Owners (the ACouncil@), acting by and through St. Paul
Fire & Marine Insurance Company, appeals from a summary judgment granted in
favor of Park Warwick L.P., Park Warwick Investments, L.L.C., and Park Hotel
Investments, L.L.C (collectively, the AHotel Appellees@).  We affirm in part, reverse in
part, and remand for further proceedings consistent with this opinion.








Background

The Warwick Hotel and the Warwick Towers condominium are
located across Fannin Street from one another in Houston.  Both buildings were
damaged in June 2001 when heavy rains from Tropical Storm Allison inundated the
city.

St. Paul contends the hotel had a flood barrier system in
place in June 2001 to prevent water at street level from pouring down a loading
dock ramp into the hotel=s basement.  St. Paul alleges the hotel failed to use this
barrier during the storm, which allowed water to enter the hotel=s basement; travel through a
connecting tunnel that runs under Fannin Street; reach the condominium=s basement; and cause extensive
damage.  See Warwick Towers Council of Co-Owners v. Park Warwick, L.P.,
244 S.W.3d 838 (Tex. 2008) (per curiam).  The Hotel Appellees dispute whether
such a barrier existed in June 2001.

The Council and others sued the Hotel Appellees and asserted
claims for negligence, nuisance, and trespass based on water damage to the
condominium from Tropical Storm Allison.  St. Paul also asserted a subrogation
claim against the Hotel Appellees based on payments it made as the condominium=s insurer for water damage in
connection with the storm.  See generally Ortiz v. Great S. Fire and Cas.
Ins. Co., 597 S.W.2d 342, 344 (Tex. 1980).  St. Paul=s subrogation claim was predicated on
causes of action against the Hotel Appellees for negligence, nuisance, and
trespass.

The Hotel Appellees filed a motion for partial summary
judgment.  Among other grounds, they asserted that St. Paul=s claim is foreclosed by a waiver of
subrogation contained in a 1980 easement agreement.  The trial court signed an
interlocutory order in May 2004 granting partial summary judgment in favor of
the Hotel Appellees on St. Paul=s subrogation claim, and on the Council=s nuisance and trespass claims.  The
Council=s negligence claim remained
unresolved.








In February 2005, the trial court signed an order dismissing
all causes of action asserted by the Council and other plaintiffs against the
Hotel Appellees with prejudice pursuant to a settlement.  Dismissal of the
Council=s causes of action did not extinguish
St. Paul=s subrogation claim because an
insurer becomes a pro tanto owner of the insured=s cause of action when the insurer
pays part of the insured=s loss.  See  Prudential Prop. & Cas. Co. v. Dow
Chevrolet‑Olds, Inc., 10 S.W.3d 97, 102B03 (Tex. App.CTexarkana 1999, pet. dism=d); see also In re Romero,
956 S.W.2d 659, 661 (Tex. App.CSan Antonio 1997, orig. proceeding) (from point of payment
forward, viability of insurer=s cause of action does not rise and fall with fate of its
insured=s cause of action) (citing Thoreson
v. Thompson, 431 S.W.2d 341, 347 (Tex. 1968)); Cox v. Realty Dev. Corp.,
748 S.W.2d 492, 494 (Tex. App.CDallas 1988, no writ) (dismissal of insured=s cause of action did not extinguish
insurer=s action).

The February 2005 order caused the interlocutory summary
judgment on St. Paul=s subrogation claim to become final and appealable.  See
Park Place Hosp. v. Estate of Milo, 909 S.W.2d 508, 510 (Tex. 1995).[1]  St. Paul filed a notice of appeal
in its insured=s name.  The notice of appeal did not name St. Paul.








This court dismissed St. Paul=s appeal, concluding that a notice of
appeal filed solely in the insured=s name was ineffective to perfect an
appeal as to that portion of the trial court=s final judgment addressing St. Paul=s separate subrogation claim.  Warwick
Towers Council of Co-Owners v. Park Warwick, L.P., 218 S.W.3d 149 (Tex.
App.CHouston [14th Dist.] 2007), rev=d, 244 S.W.3d 838 (Tex. 2008) (per curiam).  The Texas
Supreme Court reversed this court=s judgment and remanded, holding that
St. Paul made a bona fide attempt to appeal from the dismissal of its
subrogation claim; should have been allowed to amend the notice of appeal to
name itself as the appellant; and should have its appeal decided on the
merits.  Warwick Towers Council of Co-Owners, 244 S.W.3d at 839-40.[2]

We now address the merits of St. Paul=s appeal challenging the trial court=s grant of summary judgment against
St. Paul on its subrogation claim arising in connection with water damage to
the Warwick Towers condominium during Tropical Storm Allison.

Analysis

St. Paul raises six issues on appeal
challenging the trial court=s order granting summary judgment.  The
first five issues assail the grant of summary judgment on all causes of action
asserted by St. Paul as subrogee based on a waiver of subrogation contained in
a 1980 easement agreement.  The sixth issue assails the grant of summary
judgment on the merits of the nuisance and trespass causes of action.

The Hotel Appellees sought summary judgment under the
traditional summary judgment standard.  See Tex. R. Civ. P. 166a(c). 
They did not rely upon Rule 166a(i) or file a hybrid motion invoking both Rules
166a(c) and 166a(i).  They attached the following documents to their summary
judgment motion:  (1) an affidavit signed by Ron Hoyl, the vice president of
appellee Park Hotel Investments, LLC: (2) the 1980 easement agreement; (3) a
1983 amendment to the 1980 easement agreement; and (4) the Warwick Towers
Declaration of Condominium.








A defendant who seeks a traditional summary judgment under
Rule 166a(c) must demonstrate that the plaintiff has no cause of action as a
matter of law.  E.g., Cullins v. Foster, 171 S.W.3d 521, 530 (Tex. App.CHouston [14th Dist.] 2005, pet.
denied).  A traditional summary judgment is proper when the defendant negates
at least one element of each of the plaintiff=s theories of recovery, or pleads and
conclusively establishes each element of an affirmative defense.  Sci.
Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997).  When the
defendant has carried its summary judgment burden, the burden shifts to the
nonmovant to raise a material fact issue precluding summary judgment. Virginia
Indonesia Co. v. Harris County Appraisal Dist., 910 S.W.2d 905, 907 (Tex.
1995).  In reviewing a summary judgment, we take as true all evidence favorable
to the nonmovant and indulge every reasonable inference, and resolve any doubts
in the nonmovant=s favor.  Valence Operating Co. v. Dorsett, 164 S.W.3d
656, 661 (Tex. 2005).

I.         Waiver of Subrogation Under the 1980 Easement Agreement

St. Paul argues in its first issue that the 1980 easement
agreement does not foreclose a subrogation claim against the Hotel Appellees. 
To address the merits of this argument, it is necessary to discuss certain real
estate transactions undertaken in connection with construction of the Warwick
Towers condominium in the early 1980s.

A.        The
1980 Easement Agreement

The Warwick Hotel was built in 1925; its ownership has
changed multiple times over the years.  The Warwick Towers condominium was
built in 1982 on land formerly owned by the John W. Mecom Company.








In 1980, the condominium site was owned by Warwick Towers,
Inc.  At that time, the John W. Mecom Company owned the land on which the
Warwick Hotel and the hotel garage were located.  The hotel garage C located across Fannin Street from
the hotel and next to the condominium site C had two underground levels and three
above ground levels.  Warwick Towers, Inc. planned to add two more parking
levels and a roof deck on top of the existing Warwick Hotel garage for the
condominium=s use.

In anticipation of the condominium=s construction, an easement agreement
was signed on November 7, 1980 by the John W. Mecom Company as AGrantor@ and Warwick Towers, Inc. as AGrantee.@  The 1980 agreement granted certain
easements and collateral rights as to both the Mecom land C upon which the hotel garage was
located C and the adjacent property owned by
Warwick Towers, Inc. C upon which the condominium was to be built.  Among other
things, the John W. Mecom Company granted to Warwick Towers, Inc. an exclusive
easement for air space above the Mecom land to accommodate the garage addition;
a right of support for construction of additional garage levels; and a
non-exclusive easement and right of way covering access to portions of the
hotel garage and the Mecom land.

A First Amendment to Easement Agreement was executed on
February 1, 1983 by Houston International Hotels, Inc. C as successor to AGrantor@ Mecom C and Warwick Towers Venture C as successor to AGrantee@ Warwick Towers, Inc.  The 1983
amendment was made retroactively effective as of November 7, 1980.  Among other
things, the 1983 amendment made certain changes to the easements and rights
granted under the 1980 easement agreement.

The Warwick Hotel=s ownership is described in Hoyl=s affidavit.  Hoyl states that
appellee Park Warwick, L.P. owned the hotel in 2004.  This limited partnership
was owned in 2004 by another appellee, Park Warwick Investments, LLC, as
general partner of the limited partnership.  The limited partnership=s Amanaging member@ in 2004 was appellee Park Hotel
Investments, LLC.  Although Hoyl=s affidavit describes the hotel=s ownership as of 2004, his affidavit
is silent regarding ownership of the land on which the hotel and garage are
located.  Hoyl=s affidavit also is silent regarding changes in the hotel=s ownership over time.








B.        Waiver
of Subrogation

The Hotel Appellees moved for summary judgment based on a waiver
of subrogation clause in an indemnity paragraph in the 1980 easement agreement.

The indemnity
paragraph states as follows:

8.1  Grantee hereby agrees to indemnify
and save harmless Grantor from all loss, cost, expense and liability arising
from claims in connection with the construction, use or occupancy of the W/T
Addition, the Air Space Easement, the W/T Equipment Easement, the W/T Utility
Easement and all other rights and easements granted to Grantee hereunder, and
Grantor hereby agrees to indemnify and save harmless Grantee from all loss,
cost, expense and liability arising from claims in connection with the
construction, use or occupancy of the Reserved Area and all easements granted
to Grantor hereunder. Grantor and Grantee, in [sic] behalf of their
insurors [sic], do hereby waive all rights of subrogation which such insurors
[sic] may become entitled to as against Grantee, or Grantor, as the case may
be.

(emphasis added).  The Hotel Appellees also rely on the following
clauses:

10.5  It is intended and shall be
understood that (i) each and every right, easement, benefit or interest herein
granted and conveyed to or vested in Grantee shall be appurtenant to Grantee=s interest in the W/T Land and shall extend to each
future owner thereof, and (ii) each and every right, easement, benefit or
interest herein reserved, granted and conveyed to or vested in Grantor shall be
appurtenant to Grantor=s interest in the Mecom Land and shall extend to each
future owner thereof.

*     *     *

19.1  The terms and provisions hereof
shall be deemed to be covenants running with the Mecom Land and the W/T Land,
and shall be binding upon and inure to the benefit of the parties hereto and
their respective successors and assigns, as owners of such properties.

Under these provisions, the right to enforce the waiver of subrogation is
tied to ownership of the grantor=s interest in the AMecom Land@ C not to ownership of AThe Warwick, a hotel in Houston,
Texas.@








St. Paul argued in its summary judgment response that
material issues of disputed fact exist regarding (1) whether St. Paul waived
any rights against the Hotel Appellees; (2) whether the waiver applies to St.
Paul; and (3) the waiver=s meaning and reach.  On appeal, St. Paul argues that the
Hotel Appellees proffered no evidence to establish that they (1) acquired the
grantor=s interest in the AMecom Land;@ or (2) are successors or assigns of
the grantor=s right to enforce the waiver of subrogation under the 1980 easement
agreement.

The Hotel Appellees contend that St. Paul waived its argument
regarding absent proof by failing to raise this argument in its summary
judgment response.  See Tex. R. Civ. P. 166a(c).  In addressing the
Hotel Appellees= waiver argument, we focus on the specific type of summary
judgment motion that was filed.

The Hotel Appellees filed a traditional motion for summary
judgment invoking only Rule 166a(c).  A nonmovant has no burden to respond to a
traditional summary judgment motion unless the movant conclusively establishes
its cause of action or defense.  See, e.g.,  M.D. Anderson Hosp. v. Willrich,
28 S.W.3d 22, 23 (Tex. 2000) (per curiam).  Because traditional summary
judgments must stand on their own merits, the nonmovant can argue on appeal
that the movant=s proof is insufficient as a matter of law to support summary
judgment even if the nonmovant did not respond in the trial court.  Id. (citing
Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999), and City
of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979)). 
Therefore, we will consider St. Paul=s argument that the Hotel Appellees= summary judgment evidence is
insufficient as a matter of law to establish that they acquired the grantor=s interest in the AMecom Land@ and can enforce the waiver of
subrogation.  See id.








A court applies basic principles of contract construction and
interpretation when considering an express easement=s terms.  Marcus Cable Assocs.,
L.P. v. Krohn, 90 S.W.3d 697, 700 (Tex. 2002).  When the grant=s terms are not specifically defined,
we must give them their plain, ordinary, and generally accepted meaning.  Id.
at 701.  Pursuant to the plain language of paragraphs 10.5 and 19.1, the
grantor=s rights under the waiver of
subrogation clause pass to Afuture owner[s]@ of AGrantor=s interest in the Mecom Land.@  The Hotel Appellees do not argue
otherwise.  Instead, they contend that two affidavits signed by Ron Hoyl
adequately identify them as owners of AGrantor=s interest in the Mecom Land.@

Hoyl=s first affidavit contains the following: AI have personal knowledge of the
ownership of The Warwick, a hotel in Houston, Texas.  The Warwick is owned by
Park Warwick, L.P. which in turn is owned by Park Warwick Investments, LLC, its
general partner and I am an officer of its managing member, Park Hotel
Investments, LLC.@  At most, Hoyl=s first affidavit establishes that APark Warwick, L.P.@ owns AThe Warwick, a hotel in Houston,
Texas.@   Improvements and land are separate
estates or interests under Texas property law.  See Travis Cent. Appraisal
Dist. v. Signature Flight Support Corp., 140 S.W.3d 833, 837 (Tex. App.CAustin 2004, no pet.); Franz v.
Katy Indep. Sch. Dist., 35 S.W.3d 749, 755 (Tex. App.CHouston [1st Dist.] 2000, no pet.). 
Hoyl=s affidavit does not address
ownership of the grantor=s interest in the AMecom Land.@  Therefore, Hoyl=s first affidavit does not establish
that the entity called APark Warwick, L.P.@ or the other two Hotel Appellees own
the AMecom Land@ or succeeded to Mecom=s rights to enforce the waiver of
subrogation.

In his second affidavit, Hoyl states that he is the appellees= records custodian and recites the
business records litany under Texas Rule of Evidence 803(6).  The second
affidavit says nothing about ownership of the Mecom land or successor status
under the 1980 easement agreement.








On this record, the Hotel Appellees have not established
their ownership of the AMecom Land@ and have not established any basis upon which they can
enforce waiver of subrogation rights as the grantor=s successors under the 1980 easement
agreement.  See Barnes v. Wendy=s Int=l, Inc., 857 S.W.2d 728, 730 (Tex. App.CHouston [14th Dist.] 1993, no writ)
(contract confers rights and duties only on actual parties to the contract and
courts should not construe a contract as having been made for benefit of third
parties unless it clearly appears contracting parties intended third-party to
benefit).  The summary judgment proof is insufficient as a matter of law to
establish that the waiver of subrogation clause applies here to foreclose St.
Paul=s subrogation claim against these
appellees.

We sustain St. Paul=s first issue and remand for further
proceedings not inconsistent with this opinion.  We do not address St. Paul=s second through fifth issues, which
address alternative arguments for reversing the partial summary judgment on St.
Paul=s subrogation claim.

II.        Nuisance and Trespass

 

In its sixth issue, St. Paul contends the trial court erred
by granting summary judgment in favor of the Hotel Appellees on St. Paul=s nuisance and trespass causes of
action.

Although the Hotel Appellees told the trial court they were
submitting their motion Aunder the traditional summary judgment standard,@ they attached no evidence addressing
these causes of action.  Instead, the Hotel Appellees requested summary
judgment on the pleadings with respect to the nuisance and trespass causes of
action.

AA summary judgment should not be
based on a pleading deficiency that could be cured by amendment.@  In re B.I.V., 870 S.W.2d 12,
13-14 (Tex. 1994) (per curiam); see also Massey v. Armco Steel Co.
652 S.W.2d 932, 934 (Tex. 1983).  That is the role of special exceptions, which
provide the nonmovant an opportunity to amend before dismissal.  E.g.,
Centennial Ins. Co. v. Commerical Union Ins. Cos., 803 S.W.2d 479, 482-83
(Tex. App.CHouston [14th Dist.] 1991, no writ); see also Tex. R. Civ. P. 90,
91.  A nonmovant waives a complaint that summary judgment improperly was
granted on the pleadings by failing to raise it.  San Jacinto River Auth. v.
Duke, 783 S.W.2d 209, 210 (Tex. 1990);  Ross v. Arkwright Mut. Ins. Co.,
933 S.W.2d 302, 305 (Tex. App.CHouston [14th Dist.] 1996, writ denied).








St. Paul did not object to the Hotel Appellees= request for summary judgment on the
pleadings with respect to the nuisance and trespass causes of action, and it
did not request an opportunity to amend.  Therefore, we review the propriety of
summary judgment based on the nonmovant=s pleadings.  See Sw. Invs.
Diversified, Inc. v. Estate of Mieszkuc, 171 S.W.3d 461, 470 (Tex. App.CHouston [14th Dist.] 2005, no pet.). 
To determine whether a cause of action exists under the circumstances pleaded,
we assume that all facts alleged by the nonmovant are true and indulge all
reasonable inferences in the light most favorable to the nonmovant.  Id. 
We do not assume that any legal conclusions stated in the pleadings are true.  Id.
at 470B71.

A.        Nuisance

A nuisance is a condition that substantially interferes with
the use and enjoyment of land by causing unreasonable discomfort or annoyance
to persons of ordinary sensibilities attempting to use and enjoy it.  Schneider
Nat=l Carriers, Inc. v. Bates, 147 S.W.3d 264, 269 (Tex. 2004).  ANuisance@ refers to a kind of damage done,
rather than to any particular type of conduct.  City of Tyler v. Likes,
962 S.W.2d 489, 504 (Tex. 1997) (citing Prosser, Nuisance Without Fault,
20 Tex. L. Rev. 399, 416B17 (1942)).  An actionable nuisance
may arise from an invasion of another=s interests attributable to activity
that is intentional, negligent, or abnormal and out of place in its
surroundings.  Hicks v. Humble Oil & Refining Co., 970 S.W.2d 90, 96
(Tex. App.CHouston [14th Dist.] 1998, pet. denied); Likes, 962 S.W.2d at 503.

The original petition alleged damage to the condominium
resulting from a single flooding incident on June 9, 2001.  St. Paul
incorporated its negligence allegations into its nuisance claim, and also
specifically alleged that the Hotel Appellees failed








to maintain, use,
operate, install and/or erect and/or safely and properly maintain, use,
operate, install and/or erect its flood gate, barrier and/or device and/or
flood logs at the driveway entrance to the loading dock at The Warwick Hotel to
protect Plaintiffs= property, and thus, caused and allowed water to enter the
hotel, to flood the hotel, to cross the hotel/towers tunnel beneath Fannin
Street, and to enter and flood the Warwick Towers.  

As they did in their summary judgment motion, the Hotel Appellees
argue on appeal that St. Paul cannot recover under a nuisance theory because
the alleged damages resulted from a discrete flooding incident rather than a
continuing or repetitive event.  The Hotel Appellees also argued in the trial
court that a nuisance claim is foreclosed because the damage did not result
from a condition inherent in the Hotel Appellees= property independent of any
negligent or improper use of that property.  The Hotel Appellees do not reassert
the inherent condition argument on appeal; they argue only that Aa single, isolated event cannot
support a claim for nuisance.@  St. Paul contends that a nuisance action against a private
entity in Texas does not require proof of a continuing or repetitive
occurrence.  St. Paul also proffered an affidavit from James Dorn, a licensed
professional civil engineer, as part of its summary judgment response.  Among
other things, Dorn=s affidavit states as follows: AThe June 9, 2009 incident was the
third flood incident at the Warwick Hotel where water entered the hotel from
the loading dock entrance.  Previous water intrusion incidents occurred at the
loading dock entrance to the hotel in 1974 and 1994 according to the Warwick
Hotel=s general manager.@  The Hotel Appellees did not object
to this statement below.  

Asking whether Aa single, isolated event@ can support Aa claim for nuisance@ begs the following question:  What type
of Aclaim for nuisance@ is being asserted?  The issue is
bound up in a larger question regarding proper characterization of the asserted
nuisance as Atemporary@ or Apermanent.@  The Texas Supreme Court addressed the mutually exclusive
distinction between temporary and permanent nuisances at length in Schneider
National Carriers, Inc., 147 S.W.3d at 275B83.  In so doing, the supreme court
discussed the concept of Afrequency and constancy@ as it relates to the viability of
particular nuisance claims under particular circumstances.  Id. at 283.








The supreme court grounded its analysis on Athe substantial consequences that
flow from designating a nuisance as temporary or permanent . . . .@  Id. at 276.  The supreme
court has recognized three consequences that Aresult from categorizing a nuisance
as permanent or temporary: (1) whether damages are available for future or only
past injuries; (2) whether one or a series of suits is required; and (3)
whether claims accrue (and thus limitations begins) with the first or each
subsequent injury.@  Id. at 275.

Addressing the first consequence, the supreme court noted
that a landowner asserting a claim for temporary nuisance may recover only
damages that already have accrued.  Id. at 276.  AConversely, if a nuisance is
permanent, the owner may recover lost market value . . . .@  Id.  AAn isolated occurrence
may result in temporary loss of use and enjoyment, but is unlikely to result in
permanent loss of market value unless the damage cannot be remedied or is
likely to occur again.@  Id. (emphasis added).  A[I]f a nuisance is likely to create
flooding only during a hurricane, the infrequency and unpredictability of such
a disaster may make future losses difficult to evaluate, thus requiring a
landowner to await actual damage before filing suit.@  Id. at 277.

Turning to the second consequence, the supreme court stated: 
A[I]f future harm is anyone=s guess, the nuisance is a temporary
one and a claimant must bring a series of suits involving the same parties,
pleadings, and issues as each injury occurs.@  Id. at 278.  ARequiring separate suits for separate
injuries is feasible if injury occurs once a decade.@  Id.

As for the third consequence, the supreme court noted that
the Ageneral rules for limitations place
the relative terms used to describe temporary and permanent nuisances in
context.@  Id. at 280.  AIf noisome conditions occur only
once, the nuisance will normally be temporary because it creates substantial
interference with property on that occasion, but not on any other.@  Id. (original emphasis).








Schneider National Carriers, Inc. teaches that a temporary nuisance
claim can arise in appropriate circumstances from Athe first . . . injury,@ or from Aan isolated occurrence,@ or from Anoisome conditions [that] occur only
once.@  Id. at 277, 280.  A nuisance
claim also can arise in other circumstances.  The consequence of attempting to
predicate a particular nuisance claim upon Athe first . . . injury@ or an Aisolated occurrence@ or a Anoisome condition[]@ that Aoccur[s] only once@ is not necessarily automatic
dismissal.  Rather, the consequence is felt in the direction of subsequent
litigation shaped by rules governing the measure of damages, the number of
required suits, and accrual.  See id. at 275B83.

Determining whether the appropriate circumstances exist here
to allow a nuisance claim requires speculation at this stage of the
proceedings.  We are presented with a document styled as a Atraditional motion for summary
judgment@ seeking dismissal on the pleadings
of a broadly pleaded claim for Anuisance@ to which no special exceptions were filed.  The
circumstances present in this case may accommodate a nuisance claim, or they
may not.  The answer to that question will depend in part on whether the claim
is characterized as a temporary or permanent nuisance; how the claim is
developed; and how it is presented on the facts.  At this stage we cannot say
that such a claim is foreclosed as a matter of law under the governing standard
of review.

The Hotel Appellees cite a handful of cases predating Schneider
National Carriers, Inc. for the proposition that a single, temporary
flooding incident cannot support a nuisance claim of any kind.  See Wickham
v. San Jacinto River Auth., 979 S.W.2d 876, 880 (Tex. App.CBeaumont 1998, pet. denied); Sutton
Bldg. Ltd. v. Travis County Water Dist. 10, No. 03‑02‑00659‑CV,
2004 WL 1404045, at *5 (Tex. App.CAustin June 24, 2004, no pet.) (mem.
op.); Maverick County Water and Improvement Dist. No. 1 v. Reyes, No. 04‑03‑00421‑CV,
2003 WL 22900914, at *3 (Tex. App.CSan Antonio Dec. 10, 2003, no pet.)
(mem. op.).








We ground our analysis on Schneider National Carriers,
Inc. rather than these cases  We do so not only because Schneider
National Carriers, Inc is a subsequent pronouncement from the Texas Supreme
Court, but also because the discussion in Wickham, Sutton, and Reyes
arose in the context of sovereign immunity analysis that does not apply here.         AGovernmental
entities may be liable for nuisances created or maintained in the course of
non-negligent performance of governmental functions.@  Wickham,
979 S.W.2d at 880 (citing Likes, 962 S.W.2d at 503-04).  AAs such, sovereign
immunity is not a defense to a claim on non-negligent nuisance.@  Id.
(citing Shade v. City of Dallas, 819 S.W.2d 578, 581 (Tex. App.CDallas 1991, no
writ)).  These cases are inapposite because they discussed frequency of
occurrence in the course of determining whether there was anything inherent in
the nuisance-causing object beyond the object=s alleged improper
or negligent use.  See Wickham, 979 S.W.2d at 880; Sutton,
2004 WL 1404045, at *5; Reyes, 2003 WL 22900914, at *3.  That inquiry
differs from the one we address today.

Accordingly, we sustain St. Paul=s sixth issue with
respect to the nuisance claim.

B.      Trespass

Trespass to real property requires a
showing of an unauthorized physical entry onto the plaintiff=s property by some
person or thing.  Tex. Woman=s Univ. v.
Methodist Hosp., 221 S.W.3d 267, 286 (Tex. App.CHouston[1st Dist.]
2006, no pet.); Ronald Holland=s A‑Plus
Transmissions v. E‑Z Mart Stores, Inc., 184 S.W.3d 749, 758 (Tex. App.CSan Antonio 2005,
no pet.).  The entry need not be in person but may be made by causing or permitting
a thing to cross the boundary of a property.  Id.  Trespass usually is
regarded as an intentional tort in the sense that it involves an intent to
commit an act that violates a property right, or would be practically certain
to have that effect, although the actor may not know the act he intends to
commit is such a violation.  Harris County v. Cypress Forest Pub. Util.
Dist., 50 S.W.3d 551, 554 (Tex. App.CHouston [14th
Dist.] 2001, no pet.).








St. Paul incorporated its negligence and
nuisance allegations into its trespass claim and also asserted as follows:

Defendant PARK WARWICK=s actions, inactions and/or
omissions interfered with and invaded Plaintiffs= property and proximately caused Plaintiffs= damages, as described . . .
above.  Without Plaintiffs= authorization or permission, PARK WARWICK invaded and/or caused to be
invaded Plaintiffs= respective properties by failing
and/or refusing to maintain, use, operate, install and/or erect and/or safely
and properly maintain, use, operate, install and/or erect its flood gate,
barrier and/or device and/or flood logs at the driveway entrance to the loading
dock at The Warwick Hotel, and thus, caused and allowed water to enter the
hotel, to flood the hotel, to cross the hotel/towers tunnel beneath Fannin
Street, and to enter and flood the Warwick Towers.  PARK WARWICK knew or should
have known that its actions, inactions and/or omissions would cause water to
flood and invade Plaintiffs= property.  PARK WARWICK [sic] acts and/or omissions proximately caused
damage to Plaintiffs as described . . . above.

 

St. Paul=s allegations
against the Hotel Appellees track those at issue in Texas Woman=s University, another case
arising in connection with Tropical Storm Allison.  See Tex. Woman=s Univ., 221 S.W.3d at
285B86.  The strong
similarity between these two cases warrants further discussion.

Like the Warwick Towers, Texas Woman=s University
suffered damage during Tropical Storm Allison when water entered its facilities
in the Texas Medical Center through a tunnel.  Id.  at 270B76.  The
university sued Methodist Hospital and asserted a claim for trespass, among
other causes of action, in connection with the storm.  Id.  The
university predicated its suit in part on allegations that (1) Methodist Aowned >flood logs . . .
to block the entry of water into [Methodist] in the event that rain run-off
water levels rose in front of the driveways and other entrances to [Methodist];=@ (2) Methodist
failed to install the flood logs during the storm; and (3) as a result, A>surface run-off
rain water entered [Methodist] . . . , was allowed to exit Methodist, traveled
and overflowed the [t]unnel, and overflowed and flooded the TWU Campus.=@  Id. at
270-71.








The trial court granted summary judgment
in favor of Methodist Hospital on all causes of action asserted by the
university.  The First Court of Appeals affirmed in part and reversed in part. 
As relevant here, the appellate court affirmed summary judgment in favor of
Methodist Hospital on the university=s trespass claim
because the circumstances did not involve an intent Ato commit a
trespass that violated TWU=s property rights or would be practically
certain to violate TWU=s property rights.@  Id. at
286.  ATWU=s allegations
concerning Methodist=s failure to act are necessarily based on
Methodist=s negligence in failing to take proper flood
prevention procedures, not on an intentional act.@  Id.








These words apply with equal force to St.
Paul=s trespass claim
against the Hotel Appellees predicated on similar allegations involving an
asserted failure to use a flood barrier.  The trespass claim incorporates
negligence and nuisance allegations regarding the Hotel Appellees= asserted failure
to act; it is not predicated on a contention that the Hotel Appellees committed
an intentional act that violates a property right or would be practically
certain to have that effect.  See id.  Therefore, St. Paul=s trespass claim
fails as a matter of law.  See Mountain States Tel. & Tel. Co. v. Vowell
Constr. Co., 161 Tex. 432, 435B36, 341 S.W.2d
148, 150 (1960) (viable trespass claim predicated on road scraper being Adeliberately and
intentionally used in making a cut to the designated subgrade,@ thereby severing
a cable); see also Cypress Forest Pub. Util. Dist., 50 S.W.3d at 554; Jamison
v. Nat=l Loan Investors, L.P., 4 S.W.3d 465,
469 n.2 (Tex. App.CHouston [1st Dist.] 1999, pet. denied); Malouf
v. Dallas Athletic Country Club, 837 S.W.2d 674, 676 (Tex. App.CDallas 1992, writ
dism=d w.o.j.); Gen.
Tel. Co. v. Bi‑Co Pavers, Inc., 514 S.W.2d 168, 170 (Tex. Civ. App.CDallas 1974, no
writ);  First City Nat=l Bank v. Japhet, 390 S.W.2d 70,
74-5 (Tex. Civ. App.CHouston 1965, writ dism=d).  The cases
upon which St. Paul relies likewise address distinguishable circumstances
involving the intentional commission of an affirmative act.  See  Nugent v.
Pilgrim=s Pride Corp., 30 S.W.3d 562,
565B66 (Tex. App.CTexarkana 2000,
pet. denied) (dumping of noxious chemicals and chicken waste, which rainwater
then carried onto plaintiffs= land); Schronk v. Gilliam, 380
S.W.2d 743, 744 (Tex. Civ. App.CWaco 1964, no writ) (aerial spraying of
substances on plaintiffs= crops and pasture when substances were
intended for use on other land); McDaniel Bros. v. Wilson, 70 S.W.2d
618, 620 (Tex. Civ. App.C1934, writ ref=d) (excavating
land on own lot, which resulted in retaining wall failure after heavy rain and
damage to plaintiffs= building on adjoining lot).

The trial court correctly granted partial
summary judgment in favor of the Hotel Appellees on St. Paul=s trespass claim. 
We overrule St. Paul=s sixth issue with respect to the trespass
claim.

Conclusion

We affirm that portion of the judgment
dismissing the trespass cause of action.  We reverse that portion of the
judgment dismissing the nuisance claim and St. Paul=s subrogation
claim, and remand the cause for further proceedings consistent with this
opinion.

 

 

/s/        William J. Boyce

Justice

 

 

 

 

Panel
consists of Justices Anderson, Guzman, and Boyce.     









[1]  The Hotel Appellees did not seek summary judgment on
the merits of the negligence cause of action, or on an alleged Water Code
violation included in an amended petition filed by the Council in October
2004.  The summary judgment nonetheless became final as to St. Paul when  the
Council and the other plaintiffs dismissed their claims in February 2005
because the trial court=s May 2004 order encompassed summary judgment on
grounds that the 1980 easement agreement=s
waiver of subrogation forecloses all causes of action St. Paul might pursue as
subrogee.  We do not address the merits of any issues other than subrogation,
nuisance, and trespass in this opinion.





[2]  St. Paul filed a motion in this court after the
panel opinion was issued seeking to substitute St. Paul for the Council
pursuant to Texas Rule of Appellate Procedure 7.1(b).  This court denied the
motion.  The Texas Supreme Court held that this court erred by not allowing St.
Paul to amend its notice of appeal and remanded for further consideration.  Warwick
Towers Council of Co-Owners, 244 S.W.3d at 840.  Accordingly, we construe
St. Paul=s substitution motion as a request to amend the notice
of appeal under Texas Rule of Appellate Procedure 25.1(f) to name St. Paul Fire
& Marine Insurance Company as the appellant.  We grant the motion as
construed and direct St. Paul to file an amended notice of appeal in this court
within 10 days of the date on which this court=s judgment issues.